## McNeely v. City of Natchez.*

(Division A.   Nov. 7, 1927.)

[114 So. 484.   No. 25004.]

1. ABATEMENT AND REVIVAL.   *Statutes relating to actions surviving deceased persons, being in derogation of common law, must be strictly construed (Hemingway's Code 1927, sections 1834, 1836).*

   Hemingway's Code 1927, section 1834, relating to what actions survive to executor of deceased persons, and section 1836, relating to abatement of suit on death of party, being in derogation of common law, must be strictly construed.

2. ACTION.   *"Penal action" is an action on penal statute.*

   A "penal action" is an action on a penal statute; an action for recovery of penalty given by statute.

3. PENALTIES.   *Action for penalty imposed by ordinance for failure to observe regulations in operating ferry did not survive; "personal action" (Hemingway's Code 1927, sections 1834, 1836).*

   Under Hemingway's Code 1927, section 1834, providing that personal representatives may be liable to be sued in any "personal action" which might have been maintained against deceased, and section 1835, relating to what actions survive against executors, and section 1836, relating to cases in which death of party does not abate suit, action for penalty imposed by ordinance for failure to observe regulations in operating ferry did not survive as against defendant after his death, since it is presumed that legislature used technical words "personal action," ascribing to them their strictly technical meaning.

4. ABATEMENT AND REVIVAL.   *Term "personal action" in statute relating to actions which survive deceased persons means action for recovery of personal property for breach of contract, or for injury to person or property (Hemingway's Code 1927, sections 1834, 1836).*

   Term "personal action" in its broadest sense includes all actions except those relating to or for real estate, but in Hemingway's Code 1927, sections 1834, 1836, relating to actions which survive deceased persons, term is used in restricted sense, and means

an action brought for recovery of personal property, for enforcement of contract, or for damages for its breach, or for recovery of damages for commission of an injury to person or property.

*Corpus Juris-Cyc. References: Abatement and Revival, 1CJ, p. 153, n. 22; p. 155, n. 33; p. 175, n. 23; p. 209, n. 11, 12; Actions, 1CJ, p. 932, n. 44, 45, 46; p. 933, n. 65; Statutes, 36Cyc, p. 1118, n. 22; p. 1179, n. 16.

APPEAL from circuit court of Adams county.

HON. R. L. CORBAN, Judge.

Suit by the city of Natchez against S. B. McNeely. From the judgment, plaintiff appeals, and defendant files a cross-appeal. Reversed and rendered on direct appeal. Affirmed, and cause abated on cross-appeal.

*Ratcliff & Kennedy,* for appellant.

*L. A. Whittington, Wilmer Shields, Price & Price* and *Brunini & Hirsch,* for appellee.

REPORTER'S NOTE: Very excellent and exhaustive briefs were filed in this cause by the learned counsel on both sides. However, since they dealt with the merits of the controversy, and since the questions involved were decided by the supreme court of the United States in the cases referred to in the opinion of the court herein, we do not deem it necessary to report the briefs. After the said decisions of the United States supreme court and appellant's death had been suggested in this court, briefs were filed on the question of revival in the name of appellant's administratrix, but all authorities therein cited are dealt with by the court in its opinion.

Argued orally by *L. T. Kennedy,* for appellant, and *J. H. Price,* for appellee.

McGOWEN, J., delivered the opinion of the court.

Long prior to 1924 S. B. McNeely, the appellant herein, operated a public ferry from Natchez, Miss., to Vidalia, La., across the Mississippi river, and, after June 10, 1924, there was a disagreement between McNeely and the city of Natchez, the city of Natchez asserting the right to grant a franchise for the operation of a ferry, and also further claiming the right to fix the rates and hours of service of ferry boats engaged in transporting freight and passengers across the Mississippi river. The city of Natchez passed ordinances, in one of which was imposed a penalty of thirty dollars per day on any person or corporation that operated a public ferry across the Mississippi river without grant of franchise from the city of Natchez so to do; and in another ordinance was imposed a penalty of twenty dollars per day for failure to respect the rates to be charged, the hours of service to be observed, and the equipment to be used by any one operating a public ferry across the Mississippi river from Natchez to Vidalia.

McNeely declined to recognize the right of authority of the city of Natchez to require of him a franchise, and also refused to recognize the validity of the ordinances regulating the rates restricting commerce, etc., whereupon the city of Natchez filed its declaration in the circuit court of Adams county setting up all the facts in connection with asserting its authority to require a franchise and regulate the rates, etc., exhibiting a copy of the ordinances passed by the city imposing a penalty of thirty dollars per day for operating without a franchise, and twenty dollars per day for not putting in force the rates and regulations adopted by ordinance, as shown in the ordinances of the city of Natchez, and claimed as a penalty in these two counts, for operating without a franchise, the sum of three thousand six hundred sixty dollars, and for disregarding the rate regulations the sum of two thousand four hundred forty dollars.

The defendant sought ineffectually to remove this cause to the Federal court, and a demurrer was inter-

posed, which, plainly stated, challenged the authority of the city of Natchez (1) to require a grant of franchise for the operation of a ferry across the Mississippi river from Natchez to Vidalia; and (2) to regulate the rates, and otherwise regulate the operation of the ferry.

Both grounds of challenge of the authority of the city of Natchez are based upon the fact that McNeely contended that the declaration showed that in operating a ferry boat across the Mississippi river he was engaged in interstate commerce.

By agreement, the minutes of the mayor and board of aldermen, together with an amendment of the charter of the city of Natchez, were made exhibits to the declaration, so that the question presented might be finally determined by demurrer. There was further a written agreement that no point would be made as to the court's right to sustain the demurrer in part and overrule it in part.

The court below overruled the demurrer as to the penalty of thirty dollars per day for the failure to secure a franchise from the city of Natchez, and sustained the demurrer as to the items of penalty of twenty dollars per day for failure to abide by the rates and conform to the hours of service. Thereupon McNeely, the defendant, declined to plead further, and for failure to secure a franchise the court rendered a judgment against him for the sum of three thousand six hundred sixty dollars. As to the rates, the plaintiff, the city of Natchez, declined to plead further. As to the item on which the demurrer was sustained, it was ordered that judgment be rendered in favor of defendant McNeely.

Both plaintiff and defendant thereupon requested an appeal to the supreme court of Mississippi, which was granted by the court. In the meantime there had arisen injunction suits in Louisiana and in Mississippi, between McNeely and the town of Vidalia, La., and the same plaintiff and the same party and the city of Natchez, in Mississippi, in the respective Federal courts having

jurisdiction thereof, and the precise question presented was whether or not Vidalia, La., or Natchez, Miss., could require a franchise for the operation of ferry boats, engaged in the carrying of passengers and transportation of freight, from Natchez, Miss., to Vidalia, La., and return.

It is needless to follow the cases through the courts, but ultimately, on June 6, 1927, the supreme court of the United States, through Mr. Justice VAN DEVANTER, delivered the opinion of the court in the cases styled *Mayor and Board of Aldermen of Town of Vidalia* v. *Louisa McNeely, Administratrix of the Estate of S. B. McNeely, Deceased*, and *Louisa McNeely, Administratrix of the Estate of S. B. McNeely, Deceased*, v. *Mayor and Board of Aldermen of Town of Vidalia*, Nos. 140 and 163, respectively, found in 47 S. Ct. 758, 71 L. Ed. 863, 880, in which that court held that "the transportation of persons and property from one state to another by ferry is interstate commerce, subject to congressional regulation," and that the state was without authority to make "its consent and license a condition precedent to the operation of a ferry across a boundary water between one of its towns and a town in another state."

That court further held that ferries operating across boundary waters between states, simply as means of transit from shore to shore, are instruments of local convenience, subject to local regulations to the extent that, in the absence of congressional action, each state may act with respect to the ferriage from its shore.

It will be observed that the supreme court of the United States took exactly the opposite view from that expressed in the judgment of the circuit court, from which an appeal is prosecuted here, and had before it the question presented here.

Subsequent to the rendition of the opinion of the supreme court of the United States, the city of Natchez, through its counsel, filed the following suggestion in this court:

"Now comes the city of Natchez, appellant and cross-appellant herein, and suggests to this honorable court that S. B. McNeely has, since the filing of the case herein, died, and that, if the action herein survives, or can be revived, the appellee prays that *scire facias* issue for his legal representatives, namely, Mrs. D. B. McNeely, administratrix."

On the direct appeal counsel for the appellee, the city of Natchez, concede that the lower court was in error in holding that McNeely was liable for the penalty of thirty dollars per day in failing to secure from the city of Natchez a franchise for engaging in the public business of operating a public ferry engaged in interstate commerce from Natchez, Miss., to Vidalia, La., and that the city of Natchez had no power to fix a penalty for failure to obtain such franchise; and concede that the judgment of the court below upholding this right in the city of Natchez to require a franchise, and imposing a penalty of thirty dollars per day, amounting to a total of three thousand six hundred sixty dollars, should be reversed, and decree entered here for the direct appellant, McNeely.

They, however, assert here that the city of Natchez has the right to regulate the rates, and that on cross-appeal, if the cause may be revived, the cross-appellant, the city of Natchez, is entitled to a judgment for twenty dollars per day penalty against the estate of S. B. McNeely, deceased, for failure to observe the regulation of rates and the regulation of hours imposed by the ordinances of the city of Natchez.

Counsel for cross-appellee, McNeely, insist that the death of McNeely abated the suit for a statutory penalty imposed by the ordinances of the city of Natchez, and further generally deny that the city of Natchez has any authority from the state to regulate the rates.

Counsel for both sides have filed briefs on the question whether or not the suit may now be revived, or to

state more aptly, has the death of McNeely abated the action for the reason that it is an action for a statutory penalty solely?

Counsel for cross-appellant cite 1 C. J., par. 406, p. 209, as containing the general rule, which is in the following language:

*"Actions Under Statute to Recover Penalty.* In the absence of express statutory provision to the contrary, actions and causes of action for the recovery of statutory penalties do not survive, and in the case of a pending action the death of either party, plaintiff or defendant, is an incurable abatement. Such an action, although in form *ex contractu,* as in the case of an action for debt, is within the rule that personal actions die with the person."

They call attention to sections 1834 and 1836, Hemingway's Code 1927, as possibly being exceptions to the above statement of the general rule, but say in their brief that it is not clear whether this action against the decedent, S. B. McNeely, survives, and is a "personal action" within the meaning of sections 1834 and 1836.

Section 1834, Hemingway's Code, 1927, is as follows:

*"Remedies—What Actions Survive to Executor.—*Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted. And they shall also be liable to be sued in any court in any personal action which might have been maintained against the deceased."

The decision of this question turns upon the definition of the words "personal action" used in the above-quoted section.

At common law, a personal action, in the absence of special statute, did not survive against the deceased. And sections 1834 and 1836, *supra,* are in derogation of the common law, and must be strictly construed. It will be presumed that the legislature used the technical

words "personal action," ascribing to them their strictly technical meaning. There were many kinds of actions, such as action at law, actions *ex contractu,* action *ex delicto,* action *in personam,* action *in rem, quasi in rem,* amicable, civil, common law, equitable, hypothecary, local, mixed, penal, personal, petitory, popular, possessory, *qui tam,* real, remedial, statutory, and transitory. 1 C. J., pp. 929 to 933.

A penal action is defined as "an action upon a penal statute; an action for the recovery of a penalty given by statute." 1 C. J., 932, section 14, and note.

The same authority, section 15, defines a personal action as "an action brought for the recovery of personal property, for the enforcement of some contract or to recover damages for its breach, or for the recovery of damages for the commission of an injury to the person or property." See *Hayden* v. *Vreeland,* 37 N. J. Law, 372, 18 Am. Rep. 723.

"Personal actions are such whereby a man claims a debt or personal duty or damages in lieu thereof; and, likewise, whereby a man claims a satisfaction in damages for some injury done to his person or property." *Linscott* v. *Fuller,* 57 Me. 406, 408; *Com.* v. *Lehigh Val ley R. Co.,* 7 Kulp (Pa.) 229; *Forrester* v. *Thrasher,* 9 Ont. Pr. 383, 388.

It is true that the form of action is one of debt, and is not one for the recovery of real estate, but the ordinance here in question and sought to be enforced imposed a penalty in favor of the city as a public measure in which no private individual had any peculiar or special damage, save that which naturally flows from excessive rates or for failure to regard reasonable board regulations. It was a fine imposed upon the defendant in order to prevent a recurrence of the offense which the city imposed in its own favor, although no special injury to the person or property of the city of Natchez could be inferred from a failure to observe rates. So that we have reached the conclusion that an action for

a statutory penalty does not survive as against a dead defendant. Section 1835 is rather confirmatory of this conclusion, and is as follows:

"*Remedies—What Actions Survive Against Them.*— When any decedent shall in his lifetime have committed any trespass, the person injured, or his executor or administrator, shall have the same action against the executor or administrator of the decedent as he might have had or maintained against the testator or intestate and shall have like remedy as in other actions against executors and administrators; but vindictive damages shall not be allowed, and such action shall be commenced within one year after publication of notice to creditors to probate and register their claims."

It will be observed that vindictive or punitive damages were prohibited, and evidently the sections have been so construed by our courts as these sections also appeared in the Code of 1892.

In the case of *Wagner* v. *Gibbs,* 80 Miss. 53, 31 So 434, 92 Am. St. Rep. 598, Mayes, acting as special judge, speaking for the court, said:

"The very fact that in section 1917 the legislature prohibited a recovery of punitory damages from the estate of a deceased trespasser, and no such provision appears in section 1916, as to the case of a deceased plaintiff, shows that the legislature intended a difference; the subject-matter being clearly before the legislative mind. Moreover, the reason for the difference is perfectly manifest. Punitory damages are inflicted for the purpose of deterring a culprit in the future, and the imposition of them for such purpose is impossible in the case of a person deceased. But where the trespasser is still alive, as in the case at bar, there is no reason whatever why he should be exonerated because of the death of the one upon whom he has committed a trespass; for the punishment is imposed not to deter him from repeating his trespass as against the partic-

ular party assailed or injured, but to secure his general good behavior."

In the case of *Sallie A. Hewlett* v. *W. W. George, Executor,* 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, it was held that under section 2080, Code of 1880, "the right to recover punitive damages for personal injuries ceases with the death of the wrongdoer, although the death occurs after action begun against him. Only compensatory damages can be recovered from the personal representative," on which point Judge Woods, as the court's organ, said:

"It will be sufficient to say, that at common law this action would have abated upon the death of the defendant, and no recovery could have been had against her representative. The doctrine was that for a personal wrong, the offender could not be followed into the grave, and the dead be visited with punishment. Our statutes have modified the common law to the extent of permitting a recovery against the representative of the deceased wrongdoer to an amount sufficient to compensate for the actual damage sustained by the injured party, but the realm of the dead is not invaded and punishment visited upon the dead."

It cannot be that the legislature intended that strictly penal statutes should be enforced against the dead, but intended that the strict line of demarcation should be followed by the courts in the definition of "personal actions" in contradistinction to the definition of "penal actions."

We conclude that the term "personal action" in its broadest sense includes all actions except those relating to or for real estate, but in this statute is used in the restricted sense as defined in Corpus Juris and authorities there cited, heretofore set out.

Statutory penalties may not be enforced against the dead; therefore this cause cannot be revived in the name

of the administratrix, and the petition to revive is denied.

Reversed, and judgment for appellant on direct appeal affirmed, and the cause abated on cross-appeal.

*Reversed.*