SOVEREIGN CAMP, W. O. W., v. DURR.

(Division B. Nov. 13, 1939.)

[192 So. 45. No. 33873.]

A. A. Cohn, of Brookhaven, for appellant.

**E. B. Sauls, Jr.** and **R. L. Jones,** both of Brookhaven, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This is an appeal from the Chancery Court of Lincoln County, and from a decree in favor of the appellee for a death benefit under a policy on the life of her husband, Louis Durr, Jr. The decree was for the full amount of

the policy, less a lien thereon for the sum of $289.53, and less certain premiums accruing from March 1, 1933, to the date of the death of the insured on January 24, 1938, and which premiums had not been paid during said period for the reason that the insurer had cancelled the policy because of an alleged failure to pay the monthly premium due thereon for the month of February 1933, and which said premiums were tendered in the bill of complaint filed by the insured during his lifetime for the purpose of having the said policy reinstated.

Subsequent to the death of Louis Durr, Jr., which occurred during the pendency of the suit filed by him for a reinstatement of the policy as aforesaid, the appellee, being the wife and heir of the insured, as well as the beneficiary in the policy, filed a motion for a revivor and for permission to file a supplemental bill to have the policy reinstated and the terms and provisions thereof enforced. A bill of revivor and supplemental bill was filed by the appellee without having first obtained an order upon her motion to revive, but an order was later entered reviving the cause and permitting her to file the supplemental bill of complaint, and she thereafter refiled the same. On this supplemental bill process was issued for the appellant and duly served in the manner provided by law. The appellant had contested the motion for a revivor and for the appellee to be allowed to file the supplemental bill of complaint; and hence the order of the chancellor sustaining the motion and permitting the revivor and the filing of the bill is one of the errors assigned on this appeal.

In the case of McNeely v. City of Natchez, 148 Miss. 268, 114 So. 484, the Court declared that a personal action which survives is ''an action brought for the recovery of personal property, for the enforcement of some contract or to recover damages for its breach or for the recovery of damages for the commission of injury to the person or property.'' A suit to reinstate a contract has as its ultimate object the enforcement thereof. Upon the

death of Louis Durr, Jr., his rights and interest in having the cancellation of the policy set aside, and the contract of insurance reinstated, became vested in the appellee as beneficiary under the policy. Otherwise, she would not be entitled to have the contract reinstated and enforced even in a separate suit filed by her for that purpose. If no beneficiary had been named in the policy, it would be clear, under Section 516 of the Code of 1930, that the suit filed by the insured could have been revived in the name of his executor, administrator or other legal representative. The only authority called to our attention in the briefs of counsel on this point, wherein the beneficiary in an insurance policy or certificate was involved is that found in 1 C. J. S., Abatement and Revival, page 222, section 170, and National Council of Knights & Ladies of Security v. Scheiber, 141 Minn. 41, 169 N. W. 272, which recognize the right of an insurer to revive a suit for the cancellation of a policy against the successors in interest of the insured, including the personal representatives, transferee or beneficiary, when the suit is pending for that purpose at the time of the death of the insured, and we see no reason for allowing an insurer to revive an action in equity against the beneficiary, where the insurer is seeking the cancellation of the policy, and then denying the right to the beneficiary to revive a suit brought by the insured against an insurer to set aside an alleged wrongful cancellation of a policy.

The rule is stated in 1 C. J. 238, Sections 512-3, as follows:

"Section 512. By Bill of Revivor. According to the strict chancery practice, whenever a suit abates by death, and the interest of the person whose death has caused the abatement is transmitted to a representative which the law gives or ascertains, as an heir at law or an executor or administrator, the suit may be continued by a bill of revivor merely."

"Section 513. By Bill in Nature of Bill of Revivor, and Supplement. But when, by the death of a party, his in-

terest in the property in controversy is transmitted by a devise or in any other manner than by operation of law, so that the title as well as the person entitled may be questioned, the suit cannot be continued by a bill of revivor. In such case an original bill in the nature of a bill of revivor and supplement must be filed. The ground of distinction is that bills of revivor proper are founded on mere privity of blood or representation by proof of law, and the original bills in the nature of bills of revivor upon privity of estate or title by the act of party.''

We are of the opinion that it was proper for the appellee, as the sole person interested in having the policy reinstated and the payment of the death benefit enforced, to proceed with this suit in equity by revivor and supplemental bill, in view of the fact that it was necessary to have the cancellation set aside and the policy reinstated before it could have been enforced at law. New process having been issued under the supplemental bill and duly served on the appellant, it having thereafter filed its answer to the supplemental bill, it follows that the court acquired jurisdiction of the case to determine the rights of the parties. Moreover, even if the case had not been one of purely equitable cognizance, we would not be justified in reversing on that ground in view of Section 147 of the State Constitution.

Upon the trial on the merits, the issue was limited by agreement of counsel as follows: ''It is agreed between the attorneys for complainant and defendant that the only issue of fact to be presented is whether or not the premium on the policy mentioned in the pleadings was paid for the month of February, 1933.'' The appellant contends that the appellee failed to establish by a preponderance of the testimony the affirmative of that issue, and that therefore the chancellor should be reversed on the finding of fact. The record discloses that Emmett Durr, a son of the insured and of the appellee, testified that he lived in New Orleans, La., and that he sent a postoffice money order to L. F. Noble, financial secretary of

the Woodmen of the World Camp at Grange Hall (the camp with which the insured, Louis Durr, Jr., had been connected) each month, for an amount sufficient to cover his own assessment and that of his father; that he had done so for several years; and that he sent a postoffice money order for a monthly assessment under his father's policy, which amounted to $1.03, on February 7, 1933. He was unable to testify with absolute certainty that this payment was for February, 1933 (which was required by the terms of the policy to be paid by the last day of the month), or whether it was for the preceding month. He was only able to say that his father always "kept his dues up," and that he himself had sent an installment by postoffice money order to L. F. Noble, the financial secretary of the local lodge, each month since 1929. He introduced money order receipts showing remittances during December, 1932, and January, February, March, April and May of 1933. It was shown by the postmaster at Wesson, Mississippi, that these money orders were paid at the office to L. F. Noble on December 12, 1932, January 12, 1933, and on the 13th day of February, March, April and May, 1933, respectively. The installments due for February and March were sent by Mr. Noble to the home office, but their acceptance was refused on the ground that the installment due for February was not paid until the 26th day of March and that the policy had therefore become lapsed. These two installments, together with those for the subsequent months heretofore mentioned, were refunded to the insured by Mr. Noble on the ground that the insured had been suspended for nonpayment of the February installment within the time required.

The insured did not thereafter apply for reinstatement as provided for in the policy for the reason that he was no longer in good health, which was essential to reinstatement.

The policy was issued on May 17, 1906, and recited the receipt of the first monthly installment in advance. How-

ever, Mr. Noble and another member of the local camp testified that it had been a custom among the members generally to pay the first installment in advance and to then wait until about the last day of the next succeeding month before paying the second installment. But, Mr. Noble had been financial secretary of the local camp for only fourteen years, and of course was not in position to know positively whether or not Louis Durr, Jr., paid his second installment within thirty days after May 17, 1906, and within each thirty days thereafter, without taking advantage of the period of approximately sixty days allowed in which to make the second payment. He and the other witness referred to knew only that it had been the general custom for the members of the lodge to be one month in arrears, and based upon that generally accepted and well established custom among the members, Mr. Noble testified that the payment made on February 7, 1933, was for the installment due in January, 1933. He also stated in substance that he, as financial secretary of the camp, had until about the 13th day of March to make his report for the month of February in order that the installment due by each member for February would reach the home office by the 15th day of March; and that while the policies provide that the monthly installment must be paid before the last day of the month in which the installment is due, he adopted a custom of permitting them to pay at any time before the 13th of the succeeding month.

It is said in 33 C. J. 110, that ''Where defendant pleads and relies upon the nonpayment of a premium or assessment as a ground for forfeiting the policy, or wholly or partially avoiding liability thereon, the burden is on it to prove such nonpayment; . . .'' Again, in 37 C. J. 617, it is said that: ''Payment of Premium or Assessment. The burden of proof ordinarily is on plaintiff to prove payment of the first premium or assessment upon the payment of which the existence and validity of his policy depends, or to prove the payment of other prem-

ium which, under the terms of the policy, are conditions precedent to keeping the policy in force, or to prove a waiver of such payments. But the burden of proving nonpayment of premiums or assessments as a defense is on defendant, where facts sufficient to show a prima facie case for plaintiff are either admitted or proved; . . ."

In view of the fact that the money order which Mr. Noble says was purchased at New Orleans on March 21st and received by him on March 26th covered an installment due on both the policy held by Emmett Durr and the one held by his father, and it was shown that the father was suspended while the son was not, and that this was true notwithstanding the fact that the father's installment sent in February was sent on the 7th and the son's not until the 20th, we are unable to hold that the decision of the chancellor was manifestly wrong under all of the facts hereinbefore stated in holding that the February installment on the policy in question was paid in due time; and especially in view of the fact that the postmaster at Wesson, Mississippi, testified that he cashed the money orders for Mr. Noble on the 12th day of December, 1932, and January 12, 1933, and on the 13th day of February 1933 to May 1933, inclusive, sent by Emmett Durr each month.

The decree of the chancellor must therefore be affirmed.
Affirmed.