# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00050-SCT

*R. N. TURNBOW OIL INVESTMENTS*

*v.*

*MRS. MAURICE T. McINTOSH, GRACE FULGHUM,*
*ANN FAGAN TOLBERT, WALTER FAGAN, III*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2002 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | GLENN GATES TAYLOR |
| | DONALD JAMES BLACKWOOD, JR. |
| ATTORNEY FOR APPELLEES: | SI M. BONDURANT |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND RENDERED - 03/18/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., EASLEY AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    This unusual case requires us to decide whether a chancery court may amend a sixty-eight-year old decree, based upon a claim that the decree was inaccurate. We find that, under the circumstances of this case, it may not.

## FACTUAL BACKGROUND

¶2.    In 1932, H. M. McIntosh filed suit in the Covington County Chancery Court against R. N. Turnbow, who failed to file an answer, resulting in a default judgment. According to the complaint, McIntosh and Turnbow orally formed a partnership in 1930 to acquire oil, gas and mineral interests in the

name of the partnership, "R. N. Turnbow."  The 37 exhibits attached to the complaint described the instruments, lands and interests that were subject to the alleged partnership, along with Exhibit 38 which described an Oil and Gas Lease between Turnbow and Earnest W. Pettis.

¶3.　McIntosh asked the court to "enter an order, ordering, adjudging and decreeing the Complainant to have one-half interest of all the interest now held by R. N. Turnbow, *accurately and definitely setting out said interest in said decree* and ordering and decreeing it to be divided in kind between the Complainant and R. N. Turnbow . . . ." (emphasis added).

¶4.　On April 25, 1933, the chancellor entered a decree pro-confesso, which stated, inter alia:

> It is therefore ordered, adjudged and decreed that a decree pro-confesso enter admitting all the material allegations of complainants original bill of complaint so far as the defendant, R. N. Turnbow, is concerned, and that final decree enter before the adjournment of this court.

¶5.　On May 3, 1933, the chancellor entered a decree, which stated, inter alia:

> It is therefore ordered, adjudged and decreed by the court that all right title and interest as shown of record by royalty conveyance and deeds to R.N. Turnbow in the Chancery Clerk's office of Covington County, Mississippi *pertaining to or touching the hereinafter described land* is held by the said R.N. Turnbow as grantee therein in trust for himself and H.M. McIntosh, the complainant herein the name of R.N. Turnbow as grantee in said deeds being used as a partnership name in which the said R.N. Turnbow had a one-half interest and that said H.M. McIntosh held a one-half interest.
>
> It is therefore ordered, adjudged and decreed that *as to all of the lands hereinafter described* as shown by conveyance of record in the Chancery Clerks office of Covington County, Mississippi the interest of the said R.N. Turnbow and H.M. McIntosh are jointly each owning a one-half interest therein.  (emphasis added).

¶6.　The May 3rd decree also found McIntosh entitled to half the proceeds from a "deed or royalty conveyance" from Turnbow to Earnest W. Pettis.  The decree provided a legal description of the property covered by the Pettis lease which is the only description of property within the decree.

¶7. On October 31, 1933, the chancellor entered a decree which referred to the May decree, and further referred to McIntosh's "undivided lease interest in the land *described in said above-mentioned decree . . .*" and which ordered the new holder of the Pettis lease to pay certain royalties to McIntosh. (emphasis added). No appeal was taken from either decree.

¶8. After the entry of the October decree, over sixty years quietly passed. During this period of time, all witnesses to the relevant events died, including Turnbow, McIntosh and T. Price Dale, the learned chancellor who entered the decrees in 1933.

¶9. Then, in 2000, natural gas wells were successfully drilled on land which was described in exhibits to the McIntosh complaint, but which was not described in any of the decrees entered by the chancellor.

¶10. The next year, the McIntosh heirs, Mrs. Maurice T. McIntosh, Mrs. Grace Fulghum, Mrs. Ann Fagan Tolbert and Walter Fagan III, filed this suit in the Covington County Chancery Court against R.N. Turnbow Oil Investments, the successor to Turnbow's partnership interests–seeking a declaratory judgment that they were entitled to half the royalties produced by the natural gas wells. They also sought a declaratory judgment fully describing the land which should have been covered by the first decree. The complaint did not, however, seek relief under any provision of the Mississippi Rules of Civil Procedure.

¶11. Finding that the 1933 decree should have granted McIntosh a one-half interest in mineral rights to 13 sections of land–some 2,369 acres–in addition to the land covered by the 1933 decree, the chancellor granted summary judgment to the McIntosh's heirs. From this summary judgment, Turnbow Oil appeals.

**STANDARD OF REVIEW**

¶12. This Court employs an abuse of discretion standard of review when examining a court's decision to grant or deny relief pursuant to Miss. R. Civ. P. Rule 60. *Perkins v. Perkins*, 787 So. 2d 1256, 1260-61 (Miss. 2001); *Bruce v. Bruce*, 587 So. 2d 898 (Miss. 1991).

## ANALYSIS

¶13.    Our courts of equity have always enjoyed broad, remedial powers to fully adjudicate the claims and interests of the parties. *Hall v. Wood*, 443 So. 2d 834, 842-43 (Miss. 1983). The juxtaposition of equity and law has, from time to time, created difficulty in understanding precedent. A case decided one way in circuit court might enjoy a completely different outcome, if brought in chancery court, because of the application of equitable principles not available in a court of law. Indeed, then-Chief Judge Benjamin N. Cardozo once stated in dissent:

> One could give many illustrations of the traditional and unchallenged exercise of [equity]. It runs through the whole rubric of accident and mistake. **Equity follows** the **law**, but not **slavishly** nor always. Hedges v. Dixon County, 150 U. S. 182, 192, 14 S. Ct. 71, 37 L. Ed. 1044. If it did, there could never be occasion for the enforcement of equitable doctrine. 13 Halsbury, Laws of England, p. 68.

*Graf v. Hope Bldg. Corp*., 254 N.Y.1, 9, 171 N.E. 884. 887 (1930) (Cardozo, C.J., dissenting)

¶14.    The McIntosh heirs' argument is that equitable powers of the chancery court are broad enough to grant relief awarded by the trial court. In supporting their argument, they point out:

> The remedial powers of our chancellors are sufficient to vindicate the claims and interests of all litigants. Those powers are as broad as equity and justice require. Those powers have always been marked by flexibility and expansiveness so that appropriate remedies may be decreed to satisfy the needs of the particular case. The chancellor's remedial powers are marked by plasticity. Equity jurisdiction permits innovation that justice may be done.

*Hall*, 443 So. 2d at 842-43. While a chancellor's remedial powers may be "marked by flexibility" and "plasticity", they are not unbridled powers. "Courts of equity have all remedial powers necessary to the particular case, except those that are expressly forbidden by law." *Id.* at 843.

¶15.   We are asked in this case, in the name of equity, to overlook established rules of law, and to assume that a chancellor, now deceased, made a mistake which has gone unchallenged for over sixty years. This we cannot do.

¶16.   By order dated May 26, 1981, this Court adopted the Mississippi Rules of Civil Procedure. The first rule thereunder states:

> These rules govern procedure in the circuit courts, chancery courts, and county courts in all suits of a civil nature, whether cognizable as cases at law or in equity, subject to certain limitations enumerated in Rule 81; however, even those enumerated proceedings are still subject to these rules where no statute applicable to the proceedings provides otherwise or sets forth procedures inconsistent with these rules. These rules shall be construed to secure the just, speedy and inexpensive determination of every action.

Miss. R. Civ. P. 1.

¶17.   The remedy sought by the McIntosh heirs in the trial court is addressed by the Mississippi Rules of Civil Procedure. Rule 60 provides the appropriate and limited remedy available to a party who alleges an order or judgement entered by a trial court is not accurate. Therefore, a review and discussion of the provisions of Rule 60 is necessary.

### Rule 60(a).

¶18.   Rule 60(a) provides relief from clerical mistakes by allowing a court to amend decrees to correct clerical errors without regard to the passage of time. This is because such corrections do nothing more than restate what was originally pronounced. M.R.C.P. 60 cmt.; *Whitney Nat'l Bank of New Orleans v. Smith*, 613 So. 2d 312, 315 (Miss. 1993).

¶19.   The application of this provision turns on whether the failure of the chancellor to include certain real property in the 1933 decree can fairly be characterized as "clerical error."

¶20. Although "clerical error" is not defined in Rule 60, it is defined elsewhere as "[a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." *Black's Law Dictionary* 563 (7th ed. 1999). Under the narrow scope, definition and measuring of that term, the McIntosh heirs' claim must fail.

¶21. Because of the lack of evidence and the passage of time, we are not prepared to say that the omission of the property in question from the decree was a "minor mistake" of the chancellor.

**Rule 60(b).**

¶22. Rule 60(b) provides relief from judgments and orders for six enumerated reasons:

(1)     fraud, misrepresentation, or other misconduct of an adverse party;

(2)     accident or mistake;

(3)     newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(4)     the judgment is void;

(5)     the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no linger equitable that the judgment should have prospective application;

(6)     any other reason justifying relief from the judgment.

¶23. In the case sub judice, either the chancellor made a mistake [reason (2)] by his failure to include in his 1933 decree the property which is the subject of this suit, or he had reasons which we cannot learn because of the passage of time and the unavailability of witnesses.

¶24. Additionally, motions under Rule 60(b) must be made within a reasonable time. The Rule specifically provides that "for reasons (1), (2), and (3) not more than six months after the judgment, order, or proceeding was entered or taken."

¶25. Reasons (1), (3), (4) and (5), clearly do not apply here. As to reason (6), "this clause's 'any other reason' language refers to any other reason than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion." ***Briney v. United States Fid. & Guar. Co.***, 714 So. 2d 962, 966 (Miss. 1998) (quoting ***Batts v. Tow-Motor Forklift Co.***, 66 F.3d 743, 747 (5th Cir. 1995)). Therefore, since the issue raised in the case sub judice falls within reason (2), reason (6) is inapplicable.

¶26. Reason (2) allows the court to amend the decree because of "accident or mistake." However, motions based upon this reason must be filed within six months after the judgment was entered. Since the action was filed outside the six-month period for filing such claims, the relief sought by the McIntosh heirs herein is time-barred. Because this suit is time-barred, the other issues raised by Turnbow Oil need not be addressed.

## CONCLUSION

¶27. For these reasons, we reverse the chancellor's judgment, and we render judgment here finally dismissing the McIntosh heirs' complaint and this action with prejudice as untimely.

¶28. **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH AND WALLER, P.JJ., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. DIAZ, J. NOT PARTICIPATING.**