# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00580-SCT

*THE ESTATE OF LADELL BECKLEY,*
*DECEASED: CLARENCE BECKLEY, AS*
*EXECUTOR*

*v.*

*JOHN BECKLEY*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                02/22/2005
TRIAL JUDGE:                     HON. JASON H. FLOYD, JR.
COURT FROM WHICH APPEALED:       PONTOTOC COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         RHETT R. RUSSELL
                                 D. KIRK THARP
ATTORNEY FOR APPELLEE:           GENE BARTON
NATURE OF THE CASE:              CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                     REVERSED AND RENDERED - 06/14/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Appellant Clarence Beckley, the executor of the estate of Ladell Beckley, appealed

from the decision of the Chancery Court of Pontotoc County awarding approximately

$30,000 dollars plus interest to Ladell's brother, John Beckley.  The Court of Appeals, in a

five-five split decision, affirmed the decision of the chancery court.  *Estate of Beckley v.*

*Beckley*, 2006 Miss. App. LEXIS 575 (Miss. Ct. App. 2006).  The issue presented by the

Appellant in his petition for writ of certiorari is whether the chancellor erred in awarding

funds to John Beckley, instead of to the estate.  We find that the dissent authored by Judge

Chandler, and joined by Judges Southwick, Irving, Griffin and Roberts reaches the correct result. We reverse the decision of the chancery court and the Court of Appeals and render judgment in favor of the estate for approximately $30,000 which was wrongfully withdrawn from the certificate of deposit, plus the accumulated interest.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Court of Appeals stated the facts as follows:

> Ladell Beckley, a native Mississippian, returned to this state in the early nineteen-eighties to commence his retirement. Ladell moved to Pontotoc, Mississippi and lived near his nephew, Larry Satterwhite. In the late nineties, Ladell's health began to fail, though he remained of sound mind. Satterwhite began caring for Ladell by tending to his health needs, providing his transportation, and performing errands for him.
>
> While away from Mississippi, Ladell had fathered ten children. Ladell also had a younger brother, John Beckley, who lived in Joliet, Illinois at all times relevant to these proceedings. In September 2000, Ladell met with his attorney, Rhett Russell, and executed a will. In the will, Ladell bequeathed one hundred dollars each to two individuals unconcerned with this litigation, and left the residue of his property to five of his children, in equal shares. Ladell had saved approximately seventy thousand dollars which he had accumulated from his efforts during his lifetime. On October 18, 2000, Ladell purchased a certificate of deposit from BancorpSouth bank in the amount of $28,699.79. This certificate of deposit was titled jointly in the name of "Ladell Beckley or John Beckley." Under the heading "Account Ownership," the certificate of deposit indicated that Ladell had requested a joint account with survivorship.
>
> On March 8, 2001, Ladell purchased another certificate of deposit, this one in the approximate amount of $29,000. He titled this certificate of deposit in the name of himself or Satterwhite. In October 2001, Ladell's health worsened, and Satterwhite moved in with Ladell to provide more continuous care. On October 18, 2001, Ladell bought a third certificate of deposit in the amount of $10,000 and titled it in the name of himself or Satterwhite.
>
> In January 2002, Ladell's health declined further and he was admitted to a nursing home. On January 8, 2002, Ladell executed a durable power of attorney appointing Satterwhite as his attorney-in-fact. On January 14, 2002, Satterwhite, wielding the power of attorney, withdrew the funds from the

certificate of deposit titled to Ladell Beckley or John Beckley and deposited these funds into another certificate of deposit in the name of Larry Satterwhite or John Beckley. On the same day, Satterwhite also withdrew the funds from the two certificates of deposit that he jointly held with Ladell. Satterwhite used a portion of these funds to pay the balance of a loan of Ladell's in the amount of $2,769.52. With the remainder of the funds, Satterwhite purchased two certificates of deposit in the amounts of $27,136.85 and $10,066.30. These certificates of deposit were titled in Satterwhite's name only.

Ladell's health having improved, he left the nursing home sometime in January or February 2002. Ladell's son, Clarence, visited him during the month of February. On February 4, 2002, Clarence drove Ladell to attorney Russell's office. Russell testified that Ladell was frantic because his money had been taken from the bank without his permission. At Ladell's request, Russell drafted a complaint against Satterwhite for the return of the funds. In the complaint, Ladell alleged that he was the exclusive owner of the certificates of deposit and that the certificates had been titled alternatively in the name of John or Satterwhite "for survivorship purposes only." Ladell alleged that Satterwhite had a fiduciary and confidential relationship with him and had presented him with the durable power of attorney at a time when Ladell could not read or understand the instrument. Ladell alleged that he had been unduly induced by Satterwhite to execute the instrument; in the alternative, Ladell stated that he hereby revoked the power of attorney. Ladell alleged that Satterwhite had withdrawn Ladell's funds from BancorpSouth without his permission and also had taken some of his personal property. Ladell prayed for a preliminary injunction against Satterwhite's disposition of the funds, replevin of the personal property, an accounting, damages, and costs.

During this visit with Russell, Ladell also executed a second will. In this will, Ladell devised the residue of his estate in equal shares to his surviving children. On February 5, Ladell returned to Russell's office and signed the complaint. The complaint was filed on February 7, 2002, initiating the instant lawsuit. Ladell passed away on March 1, 2002, and his will was admitted to probate on March 4, 2002. Clarence was named the executor of Ladell's estate.

In mid-March, Clarence, John, Satterwhite and Russell met at Russell's office to discuss the proper disposition of the funds from the certificates of deposit. They agreed that Satterwhite would withdraw the funds from the certificates of deposit and give them to Russell to be held in escrow pending the outcome of this litigation.

On March 4, 2002, Clarence filed a motion, in his capacity as Executor of the Estate of Ladell Beckley, requesting that he be substituted as a party/plaintiff. On May 2, 2002, John filed a motion to intervene asserting his interest in the funds from the certificate of deposit that bore his name prior to Satterwhite's redemption of that certificate of deposit. The chancery court granted both of the motions, and a trial was held on November 23-24, 2004.

On February 24, 2005, the chancellor entered an amended judgment finding that there was a presumption that Satterwhite had exercised undue influence over Ladell. The chancellor also found that the presumption of undue influence was not rebutted. Consequently, the chancellor determined that the funds should be put back into the certificates of deposit as they were before Satterwhite used the power of attorney. Furthermore, the chancellor found that there was no evidence that John exercised undue influence. The chancellor determined that if the certificates of deposit remained unchanged on Ladell's death, John, as survivor, was entitled to the funds in his certificates of deposit. Therefore, the chancellor ordered that Russell deliver the proceeds of the October 18, 2000 certificate of deposit ($30,000) to John.

*Beckley*, 2006 Miss. App. LEXIS 575 at 2-8. On August 8, 2006, the Court of Appeals affirmed the decision of the chancery court, and denied the Appellant's Motion for Rehearing on December 13, 2006.

## DISCUSSION

I. **WHETHER THE CHANCERY COURT ERRED IN AWARDING THE FUNDS TO JOHN BECKLEY INSTEAD OF THE ESTATE.**

¶3. On October 18, 2000, Ladell deposited $28,699.79 of his life savings in a certificate of deposit, which he titled in the names of himself and John Beckley. On February 7, 2002, shortly after discovering that on January 14, 2002, Satterwhite had used a power of attorney to withdraw all of the funds from the certificate of deposit, Ladell filed a sworn complaint against Satterwhite for the return of the funds. In his complaint, Ladell stated that he was the exclusive owner of the certificate of deposit even though he titled the account alternatively

4

in the name of John "for survivorship purposes only." Ladell also claimed that the power of attorney was the product of undue influence by Satterwhite.

¶4. However, on March 2, 2002, Ladell died, and his will was admitted to probate on March 4, 2004. On June 10, 2002, Clarence Beckley, the executor of Ladell's estate, was substituted as the party-plaintiff in the action pursuant to Miss. Code Ann. § 91-7-237 (Rev. 2004), which states that "[w]hen either of the parties to any personal action shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator." Additionally, Miss. Code Ann. § 91-7-233 permits executors to commence and prosecute any personal action at law or in equity, which the testator might have commenced and prosecuted.

¶5. The term "personal action" as used in these sections means an action for recovery of personal property, for breach of contract, or for injury to person or property. *McNeely v. City of Natchez*, 148 Miss. 268, 274, 114 So. 484, 486 (1927). This Court has long recognized that a cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested. *McMillan v. Puckett*, 678 So. 2d 652, 654 (Miss. 1996). This Court has also held that actions to recover personal property, to enforce a contract, or to recover damages for breach of contract or for injury to person or property survive the death of the decedent. *J.H. Leavenworth & Son v. Hunter*, 150 Miss. 245, 116 So. 593 (1928). Accordingly, Ladell's action against Satterwhite accrued during his lifetime and survived his death. Upon the executor's substitution as party-plaintiff, the executor effectively stepped into the shoes of Ladell in prosecuting the action pursuant to Miss. Code

5

Ann. § 91-7-237. Under these statutes, the estate could then recover the funds that Ladell might have recovered had he lived to final judgment.

¶6.     Additionally, Ladell executed a new will while at his lawyer's office preparing the lawsuit to recover the $30,000. Ladell left his entire estate to his children under the terms of the will. All of Ladell's children testified that their father desired that the children inherit his entire estate. However, no testimony was presented that Ladell intended to return the money to the joint account or that he desired his brother to obtain any of his proceeds from the lawsuit. Additionally, in the complaint that Ladell filed against Satterwhite, Ladell's prayer was for "judgment of and from [Satterwhite] for his damages including, but not limited to, loss of possession and title of property. . . ." Nowhere in his pleadings did Ladell ask the chancellor to restore the closed certificate of deposit account. Even the chancellor's amended judgment states that "[Ladell] sought to have the *proceeds* of these certificates returned to him." (Emphasis added). All of this evidences Ladell's intent as to both the $30,000 stolen by Satterwhite which Ladell wanted returned to him and his intent as to his entire estate. We find that Ladell's sworn complaint, his will and the testimony of his children all indicate that his intent was for the children to have the funds, not his brother.

¶7.     Furthermore, in his sworn complaint, Ladell claimed that the power of attorney which resulted in Satterwhite's stealing the funds was the result of undue influence. In the amended judgment, the chancellor found Ladell's claim of undue influence to be meritorious. The chancellor held that a confidential relationship had existed between Ladell and Satterwhite, which gave rise to a presumption of undue influence. The chancellor then found that the presumption had not been rebutted. It is important to note that this finding was not

6

challenged on appeal. Additionally, in John's response to the petition for writ of certiorari, he does not dispute or challenge the chancellor's finding that all actions conducted by Satterwhite were void and that the actions of obtaining and using the power of attorney were illegal and void. Based on the chancellor's findings, had Ladell been alive at the time of the final judgment, the appropriate remedy would have been to award him the approximately $ 30,000 plus interest from Satterwhite. However, the chancellor held that, because the power of attorney was invalid, the certificate of deposit continued unchanged and equitably recreated the certificate of deposit as of January 14, 2002. The chancellor further held that the funds derived from the certificate of deposit became vested in John as the surviving joint tenant at Ladell's death on March 2, 2002.

¶8. This Court has held that while the powers of a chancellor are "as broad as equity and justice require," those powers are not without limitation. *R.N. Turnbow Oil Invs. v. McIntosh*, 873 So. 2d 960, 963 (Miss. 2004). We stated in *McIntosh* that "[w]hile a chancellor's remedial powers may be 'marked by flexibility' and 'plasticity,' they are not unbridled powers. Courts of equity have all remedial powers necessary to the particular case, except those that are expressly forbidden by law." *Id*. We find that the chancellor exceeded his broad remedial powers in recreating the certificate of deposit, as this remedy ignores the statutory right of the executor of the estate under Miss. Code Ann. § 91-7-237 to prosecute Ladell's lawsuit against Satterwhite and collect the proceeds from a judgment in his favor.

¶9. When Satterwhite wrongfully withdrew the funds from the certificate of deposit, a cause of action for the return of the funds accrued to Ladell. Ladell himself commenced this action before his death, and this lawsuit was open at the time of Ladell's death. Upon the

7

executor's substitution as party-plaintiff pursuant to Miss. Code Ann. § 91-7-237, the executor of Ladell's estate effectively stepped into the shoes of Ladell in prosecuting this action and was entitled to the same remedy due Ladell had he been alive at the time of the judgment. Therefore, the appropriate remedy was to return the proceeds of the lawsuit, the approximate amount of $30,000 plus interest, to the estate.

## CONCLUSION

¶10. Based on the foregoing reasons, we reverse the judgment of the chancery court and the Court of Appeals and render judgment in favor of the estate.

¶11. **REVERSED AND RENDERED.**

**WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**