# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00418-COA

### CONSOLIDATED WITH

### NO. 2011-CT-00820-COA

| | |
|---|---|
| **DEMPSEY SULLIVAN, BILLIE JOYCE SULLIVAN, AND TERRELL STUBBS, INDIVIDUALLY** | **APPELLANTS/ CROSS-APPELLEES** |

**v.**

| | |
|---|---|
| **ESTATE OF SAMUEL MADDOX** | **APPELLEE/ CROSS-APPELLANT** |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/23/2017 |
| TRIAL JUDGE: | HON. GERALD MARION MARTIN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | W. TERRELL STUBBS |
| | JAMES LAWTON ROBERTSON |
| ATTORNEYS FOR APPELLEE: | JAMES BURVON SYKES III |
| | L. WESLEY BROADHEAD |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART.  ON CROSS-APPEAL: AFFIRMED - 07/30/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    Dempsey Sullivan and Billie Joyce Sullivan (collectively, the Sullivans)[1] filed a

---

[1] The Sullivans' attorney, Terrell Stubbs, is also a party to this appeal.  For the purposes of clarity and brevity, we will refer to the appellants/cross-appellees collectively as "the Sullivans" unless individual usage of their names is appropriate.

complaint in 2010 seeking an injunction to prohibit their neighbors Steve Maddox and Samuel Maddox[2] (collectively, the Maddoxes) from entering their property in Simpson County. The Maddoxes filed a counterclaim asserting that they possessed an easement across the Sullivans' property. During the course of litigation, the chancellor entered an order dismissing the Sullivans' complaint for an injunction with prejudice and issuing sanctions against their attorney, Terrell Stubbs. The chancellor appointed a special master to determine the issue of the easement. The special master submitted a report, finding that the Maddoxes did not possess a valid easement over the Sullivans' property and recommending that the chancellor dismiss the Maddoxes' counterclaim with prejudice.

¶2.     The chancellor ultimately entered a final judgment that, among other things, ratified and adopted the special master's report, dismissed the Maddoxes' counterclaim with prejudice after finding that no easement existed, affirmed and ratified all prior orders and judgments filed in the matter, and assessed the costs of the special master to the Maddoxes.

¶3.     The Sullivans now appeal, asserting the following assignments of error: (1) they did not receive proper notice when the chancellor dismissed their complaint with prejudice; (2) the chancellor erred in dismissing their complaint on the merits; (3) the chancellor erred in awarding sanctions; (4) the Estate of Samuel Maddox was improperly substituted as a party for Samuel Maddox; and (5) the chancellor erred by ratifying and affirming all prior orders of the chancery court. The Maddoxes filed a cross-appeal, arguing that the chancellor erred

---

[2] Steve Maddox died during the chancery court proceedings and is not a party to this appeal. Samuel Maddox also died during the chancery court proceedings. His estate was substituted as a party and is the appellee in this appeal.

in holding that the Maddoxes did not have an easement of record or an easement by implication across the Sullivans' property.

¶4.    After our review, we affirm the following: the chancellor's dismissal of the Sullivans' complaint with prejudice; the chancellor's award of sanctions; the chancellor's judgment ratifying and affirming all prior orders of the chancery court; the chancellor's order substituting the Estate of Samuel Maddox as a party; and the chancellor's judgment finding that the Maddoxes did not have an easement of record or an easement by implication across the Sullivans' property.  However, we reverse the chancellor's award of attorney's fees and expenses to the Maddoxes, which the chancellor issued as sanctions against Stubbs, and we remand this issue to the chancellor with instructions to: (1) dismiss the present action without prejudice as to Steve Maddox pursuant to Mississippi Rule of Civil Procedure Rule 25(a)(1) and (2) then reassess the distribution of the award of attorney's fees to the remaining party.

## FACTS[3]

¶5.    On March 30, 2010, the Sullivans filed a complaint in Simpson County Chancery Court requesting injunctive relief to prohibit the Maddoxes from entering the Sullivans' property.[4]  In their complaint, the Sullivans claimed that the Maddoxes wrongfully entered

---

[3] On August 26, 2005, Dempsey Sullivan filed a complaint against the Maddoxes in Simpson County Chancery Court.  *See Sullivan v. Maddox*, 122 So. 3d 75, 77 (¶2) (Miss. Ct. App. 2013) (Case No. 2011-CA-820-COA) (*Sullivan I*).  Sullivan and Stubbs appealed the chancellor's judgment, which this Court addressed in *Sullivan I*.  The record in *Sullivan I* was consolidated with the present appeal, *Sullivan v. Estate of Maddox*, 2017-CA-00418-COA (*Sullivan II*).  The real property at issue in *Sullivan I* is not the same as that at issue in *Sullivan II*.

[4] In their complaint, the Sullivans also requested the following relief: (1) a temporary restraining order against the Maddoxes to enjoin them from crossing and entering on the

3

onto their property without the Sullivans' consent under the pretense of an alleged easement. The Sullivans attached the disputed easement to their complaint and asserted that the easement was not valid or enforceable. The Sullivans also requested that the chancellor set a hearing date with the time and place for a hearing to award a permanent restraining order or permanent injunction to prohibit the Maddoxes from entering their property.

¶6. On April 6, 2010, the Maddoxes filed their answer denying the essential allegations of the complaint. The Maddoxes also filed a counterclaim arguing that they possessed an easement and asking the chancellor to enjoin the Sullivans from interfering with their use of the easement. The Maddoxes also alleged several intentional torts and demanded damages from the Sullivans.

¶7. On April 16, 2010, the chancellor entered an agreed order that stated, among other things, that "[t]he parties have agreed that the [Maddoxes] will stay off [the Sullivans'] property for a period of [forty-five] days and should this matter not be resolved within [forty-five] days, this matter shall be brought back before this [c]ourt for further action."

¶8. On February 22, 2011, the chancellor held a conference and set *Sullivan I* for trial on May 3, 2011, and *Sullivan II* for trial on May 4, 2011.

---

Sullivans' property; (2) a temporary restraining order enjoining the Maddoxes from any contact whatsoever with the Sullivans, their family, or any guests; (3) a temporary restraining order directing the Maddoxes to immediately remove all obstructions now existing on the Sullivans' property and any equipment, including but not limited to any gates, fences, bridges, other structures and equipment; and (4) compensatory and punitive damages plus post-judgment interest, pre-judgment interest, reforestation costs, expert witness fees, attorney's fees, all court costs, reasonable damages for mental anguish, worry, stress, and other damages, along with all other equitable general and special relief as the Sullivans may be entitled to in the premises.

¶9. On April 12, 2011, the Sullivans filed motions for recusal of the chancellor, Judge David Shoemake, in both *Sullivan I* and *Sullivan II*. In both motions, the Sullivans claimed "it has recently been brought to the undersigned's attention[] that Wesley Broadhead, attorney for the [Maddoxes], is currently representing Mike Stuckey, the husband of this [c]ourt's [a]dministrator, on a proceeding on appeal" in the Simpson County Circuit Court. The Sullivans asserted that based on this claim, the chancellor should recuse himself from *Sullivan I* and *Sullivan II* "in order to avoid even an appearance of impartiality or impropriety." The Maddoxes filed motions to consolidate the hearings on the motions to recuse filed in *Sullivan I* and *II*.

¶10. On May 3, 2011, the chancellor entered an order consolidating the hearings in regard to the Sullivans' motions to recuse. That same day, the chancellor entered its order denying Sullivan's motions to recuse in *Sullivan I* and *Sullivan II*. The next morning, prior to the commencement of the *Sullivan II* trial, the Sullivans renewed the motions to recuse, which the chancellor denied.

¶11. At the *Sullivan II* trial held on May 4, 2011, the chancellor heard testimony from Samuel Maddox; Steve Maddox; Dempsey Sullivan; Bobby Hall, who owned the property between Sullivan and Maddox; Stanley Eubanks, whose family once owned certain portions of the Sullivans' property; and Samuel Maddox Jr. The matter was then continued to a later date.

¶12. On March 13, 2013,[5] the Sullivans filed a second motion for the recusal of the

---

[5] The Sullivans filed their appeal in *Sullivan I* in July 2011.

chancellor in the present matter and in all other cases involving the Sullivans or their attorney, Stubbs. The Sullivans alleged that Judge Shoemake and his court administrator had a clear bias against the Sullivans that created a conflict in this case and in all cases involving the Sullivans. The Sullivans attached the following documents to the motion for recusal: Campaign Finance Reports for the 2010 Election Campaign filed by Judge Shoemake, who was a candidate; a copy of a bar complaint filed by Judge Shoemake's court's administrator against the former judge, Larry Buffington; a copy of the response to the bar complaint filed by Larry Buffington; and seven affidavits.

¶13. On April 4, 2013, the Maddoxes filed a joint response to the Sullivans' March 13, 2013 motion for recusal. In the response, the Maddoxes argued that the Sullivans should be sanctioned or disciplined pursuant to Mississippi Rule of Civil Procedure 11 for knowingly continuing to make false statements of material fact to the court.

¶14. Nearly a week later, on April 10, 2013, the chancellor entered an order denying the motion for recusal, dismissing the Sullivans' complaint, imposing sanctions, and continuing the cause for a hearing on monetary sanctions. In his order, the chancellor stated that the Sullivans' March 13, 2013 motion to recuse was filed "801 days after this [c]ourt took the bench on January 1, 2011, and 673 days after May 3, 2011," the date the chancellor entered his first order denying the Sullivans' motion to recuse. The chancellor stated that Uniform Chancery Court Rule 1.11 does not allow parties to file unlimited motions to recuse, and the rule requires recusal motions to be filed within a reasonable period of time.

¶15. The chancellor discussed the Sullivans' motion to recuse, as well as the affidavits and

6

bar complaint attached to the motion. The chancellor found that the attached documents failed to "evidence any bias or partiality of this [c]ourt" and produced "no evidence of this [c]ourt having any involvement in or knowledge of" improper campaign donations or other improper conduct.

¶16. Regarding the Sullivans' trespass claims, the chancellor found the Sullivans failed to prosecute the claims. The chancellor explained as follows:

> The 2010 [c]omplaint filed by the [Sullivans] asked the [c]ourt to cancel an easement given on August 24, 1981, across property that is now owned by the [Sullivans], the easement now benefitting the [Maddoxes]. The [c]omplaint also seeks damages for trespass, negligence, and damages to the value of the real property, and numerous other claims for damages. The prior [c]hancellor, without a trial, entered an [o]rder on April 7, 2010, ordering the [Maddoxes] not to cross the [Sullivans'] property and stated further "should this matter not be resolved within 45 days, this matter shall be brought back before this [c]ourt for further action." Since the [Sullivans] have such an order, they have chosen not to bring their action back before the [c]ourt.
>
> The [c]omplaint was filed March 30, 2010. The [Sullivans] have not sought to prosecute their [c]omplaint since the one day of trial on May 4, 2011. In fact, they have resisted all efforts by the [Maddoxes] to have the case concluded. Counsel for the [Sullivans] is well aware of Uniform Chancery Court Rule 1.11 which requires the filing of affidavits and requires a ruling by the [t]rial [c]ourt within thirty (30) days. To the [c]ourt, this is evidence of delay, dilatory conduct and a clear abuse of the judicial process, and in clear violation of [Mississippi Rule of Civil Procedure] 41(b).

The chancellor cited to *Walker v. Parnell*, 566 So. 2d 1213, 1216 (Miss. 1990), and ultimately ruled that "the actions of [the Sullivans] and [Stubbs] show a complete failure to prosecute and a clear pattern of dilatory delay, and contumacious conduct . . . ." The chancellor then dismissed Sullivan's complaint pursuant to Rule 41(b).

¶17. The chancellor further found that "all of the above referenced actions evidence the

7

filing of untimely and frivolous pleadings for the purpose of harassment and delay without substantial justification, and disrespect for the integrity of the [c]ourt and constitute the willful violation of Rule 11 . . . and the Litigation Accountability Act[,]" as well as Mississippi Rule of Processional Conduct Rule 8.2(a).

¶18.　In determining sanctions, the chancellor stated that he considered lesser sanctions along with the fact that Sullivan and Stubbs also previously attacked the integrity of the chancellor with allegations of improper campaign donations and the allegations of impartiality in *Sullivan I*. The chancellor recalled that Sullivan's attack in *Sullivan I* resulted in sanctions in the amount of $42,922.91, which the Court of Appeals affirmed on appeal. The chancellor then stated that despite the sanctions issued in *Sullivan I*, Sullivan and Stubbs "continue[d] their dilatory conduct, delay, contumacious conduct and the preparing and procurement of affidavits all in an effort to embarrass and attack the integrity of the [c]ourt." The chancellor determined that a monetary sanction in the present matter would therefore be insufficient. The chancellor explained that he initially intended to impose a monetary sanction after the hearing on the amount of attorney's fees, but he felt "compelled to order and assess other sanctions." The chancellor thus held that the appropriate sanction in the present matter was to dismiss the Sullivans' 2010 complaint with prejudice.

¶19.　The chancellor ordered the Sullivans to reimburse the Maddoxes for all expenses and attorney's fees incurred in the defense of the complaint and in prosecution of their demands for affirmative relief. The chancellor set a hearing for April 30, 2013, on the matter of the amount of sanctions to be assessed against the Sullivans. The chancellor also continued the

8

present matter for a hearing on the amount of monetary attorney's fees sanctions. The chancellor ruled that "this [c]ourt retains jurisdiction of the issue of this matter until such time as final judgment is entered assessing the amount of attorneys' fees and any other fines, penalties, damages and/or other sanctions."

¶20. On April 24, 2013, the Sullivans filed a petition in the Mississippi Supreme Court pursuant to Mississippi Rule of Appellate Procedure 48(b),[6] seeking review of the chancellor's judgment denying the Sullivan's 2013 motion for recusal. On April 26, 2013, the Sullivans also filed an emergency motion to stay the sanctions hearing. The supreme court granted the Sullivans' motion to stay the sanctions hearing pending the supreme court's decision of the Sullivan's petition to review the chancellor's judgment. On June 12, 2013, the supreme court entered an order denying the Sullivans' petition for review of the chancellor's judgment denying the motion to recuse.

¶21. On May 8, 2013, the Sullivans filed their notice of appeal of the chancellor's order dismissing their complaint. The Maddoxes filed a motion to dismiss the appeal, asserting that the chancellor's April 10, 2013 judgment did not dispose of all of the claims against all of the parties. On April 1, 2014, the supreme court entered an order granting the Maddoxes' motion and dismissing the appeal.

¶22. On September 16, 2013, the Sullivans filed a motion to dismiss or alternatively for a continuance of the sanctions hearing. The next day, the chancellor held a hearing on the issue of attorney's fees and sanctions and on the Sullivans' motion to dismiss. The

---

[6] This rule addresses the appellate proceedings on a motion for disqualification of a trial judge.

9

chancellor explained that as part of the sanctions against the Sullivans, he dismissed the complaint based on the Sullivans' failure to prosecute:

> [T]here were no efforts to prosecute the case. This [c]ourt tried part of the [case] on May . . . 4, 2011. Never since May [4, 2011] ha[ve] [the Sullivans] asked to proceed with the case. When the [Maddoxes] asked that it be put on the docket and tried, the [Sullivans] objected. Instead of moving the case, doing anything with the case, it turned into well, let's get rid of the judge.

¶23. The chancellor also determined that the affidavits attached to the Sullivans' motion for recusal were false and not credible. The chancellor found that the motion itself was made "in bad faith and was for an improper purpose and it was frivolous and it's based on complete falsehoods." The chancellor stated that several of the affidavits referred to incidents that allegedly occurred before he took the bench in January 2011, and this information, as well as his campaign finance reports, was available in April 2011, when the Sullivans filed their first motions to recuse.

¶24. Regarding sanctions, the chancellor "order[ed] and impose[d]" upon Stubbs the payment of the Maddoxes' attorney's fees and expenses as a sanction to be paid by Stubbs. The chancellor specifically ordered Stubbs "to pay $19,617.32 to Steve Maddox—or to the chancery clerk of Simpson County for payment to Steve Maddox and Samuel Maddox[—]as reimbursement for attorneys' fees and expenses." The chancellor acknowledged that the April 10, 2013 judgment stated that the court "would impose sanctions against Mr. Dempsey Sullivan and Billie Joyce Sullivan," but the chancellor determined that "these fees were made necessary." The chancellor explained that the pleadings Stubbs prepared "were of such a frivolous and incredible nature . . . . [that] the [c]ourt does not feel that it would be equitable

to assess monetary sanctions against [Dempsey] and Ms. Billie Joyce Sullivan[,] especially due to the fact that they've had their case dismissed because of the actions of counsel."

¶25. On October 8, 2013, the chancellor entered a judgment memorializing his rulings from the bench and denying the Sullivans' motion to dismiss or alternatively to continue the hearing to assess monetary sanctions "for the reasons stated in [the chancellor's September 17, 2013 bench ruling]." The chancellor awarded Maddox $19,617.32 in attorney's fees.

¶26. On October 29, 2013, the Sullivans filed a notice of appeal from the October 8, 2013 judgment. The Maddoxes filed a motion to dismiss the appeal, asserting that the October 8, 2013 judgment was not a final, appealable judgment. On April 1, 2014, the supreme court entered an order dismissing the Sullivans' appeal.

¶27. The Sullivans also filed a petition for an extraordinary writ pursuant to Mississippi Rule of Appellate Procedure 21 and alternatively requested permission to file an interlocutory appeal pursuant to Mississippi Rule of Appellate Procedure 5(a) on October 29, 2013. On April 1, 2014, the supreme court entered an order denying the petition.

¶28. The chancellor held additional trial proceedings on the merits of *Sullivan II* on November 6, 2014. However, at the trial, the parties raised numerous issues concerning the admissibility of documents and status of the pleadings. As a result, the chancellor, on his own motion, recessed the hearing until all of the pretrial matters, including a scheduling order, were properly completed.

¶29. On November 21, 2014, the chancellor entered an order appointing a special master to the case pursuant to Mississippi Rule of Civil Procedure 53. The chancellor explained that

11

he had a full calendar for the remainder of 2014 and for the first three months of 2015. The chancellor stated that he would also be charged with the administrative responsibilities of organizing matters relating to a newly elected chancellor. The chancellor discussed the procedural history of *Sullivan II*, including the Sullivans' complaint and the Maddoxes' counterclaim, and found that "the above matters constitute exceptional conditions which require this [c]ourt to consider the use of a Special Master."[7]

¶30. On February 17, 2015, Judge Shoemake entered an order recusing himself from presiding over any case in which Stubbs served as the lead attorney. After this point, special master Judge William Barnett and Chancellor Gerald Martin presided over the proceedings.

¶31. On May 19, 2015, the Sullivans filed a motion to set the case for trial. A notice of hearing was entered, setting the trial for August 26, 2015, before special master Judge William Barnett.

¶32. At the trial held on August 26, 2015, the special master heard testimony from Sullivan and Bobby Hall, who owned property between the Sullivans' property and the Maddoxes' property. The special master entered his report on January 27, 2016. The special master stated that "the only issue to be determined is whether or not the [Maddoxes] have an easement over the lands of the [Sullivans] for ingress to their property." The special master found that the Maddoxes had no existing easement across the Sullivans' land. The special master stated that in making his ruling, he heard testimony and arguments from the parties, read transcripts from prior hearings, examined the exhibits, reviewed the authorities

---

[7] Only the first two pages of this order appear in the record.

12

submitted by the parties, and conducted his own research.

¶33. In his report, the special master set forth that in 1981 Annie Collier was granted an easement from the public road to certain described land Collier owned. Collier's land did not front a public road. The easement constituted an easement appurtenant and set out in its body that it constituted "a covenant running with the land owned by the Grantee" and for the purpose of "ingress, egress and regress." The easement was to be unobstructed and the holder of the easement could maintain the easement as the holder elected. On April 27, 1987, the Sullivans purchased land from Collier which contained in full the land over which the easement was granted. Now the Sullivans owned all of Collier's land for which the 1981 easement was granted. Collier maintained ownership of a pie-shaped portion of land. The special master determined that Collier did not reserve an easement over the land she sold to the Sullivans for access to the pie-shaped portion of land she still owned. The special master found that "[w]ith the 1987 purchase, the Sullivans then became the owners of the easement since by the easement's very terms, the easement belonged to the land, not to . . . Collier personally."

¶34. By other conveyances over time, the Sullivans acquired the land through which the 1981 easement was given. The special master concluded that when the Sullivans "owned both the land on which the easement was given and the adjacent land for which the easement was given, the easement merged into the land on which the easement was given and, therefore, the 1981 easement no longer existed."

¶35. The special master found that in 1994, Collier transferred to the Maddoxes "certain

13

lands[,] including the remaining portion of Mrs. Collier's lands for which the 1981 easement was given and [she] purported to transfer the 1981 easement itself." However, the special master held that "Collier had no authority to transfer the easement to the Maddoxes as, by fact and law, she no longer owned the easement." The special master further stated that although the pie-shaped portion of land Collier transferred to the Maddoxes "is adjacent to other lands they own and lands the [Sullivans] own, it is not adjacent to the lands on which the 1981 easement was located. In fact, it is about 900 feet away." The special master also found that the Maddoxes purchased the pie-shaped portion from Collier after Collier sold the land between the pie-shaped portion and the land over which the easement ran. The special master found that "[w]hen the Maddoxes purchased the pie-shaped lot from Mrs. Collier, they knew, or should have known, that they would only have access to the lot through the adjoining land they owned and not the Sullivans."

¶36.    The special master therefore recommended that the chancellor hold that the Maddoxes possessed no easement to the public road across the Sullivans' property; as a result, the Maddoxes' counterclaim should be dismissed. The special master advised that although "the Maddoxes have no existing easement [across] the Sullivans' [property], they may file an action in the appropriate [c]ourt against the Sullivans and their other neighbors to attempt to establish an easement for necessity if they think that such need exists."

¶37.    On January 5, 2016, Stubbs filed a suggestion of death stating that Steve Maddox died on December 31, 2015. The Estate of Steve Maddox was not substituted as a party.

¶38.    On February 2, 2016, the Maddoxes filed a motion objecting to the report of the

special master. The Maddoxes maintained that the Sullivans did not acquire all of the land benefitted by the easement and explained that Collier still retained ownership of part of the land. The Maddoxes therefore argued that the easement was not terminated by merger. The Maddoxes also asserted that this action was not abated as a result of Steve Maddox's death and that the action should proceed in favor of Samuel Maddox.

¶39.     On May 12, 2016, Sullivan and Stubbs filed a suggestion of death stating that Samuel Maddox died on May 11, 2016.

¶40.     On August 8, 2016, Samuel Maddox's son, Samuel Jr., filed an entry of appearance and a motion for extension of time for substitution. In his motion, Samuel Jr. asserted that the Sullivans failed to properly serve the suggestion of death. Samuel Jr. requested that the chancellor allow for an additional ninety days "for the person qualifying to serve as executor by court appointment to be substituted in that capacity for Samuel Maddox in this action."

¶41.     On August 17, 2016, the Sullivans filed a motion to strike or dismiss Samuel Jr.'s entry of appearance and motion for extension of time for substitution. The Sullivans also filed a motion to dismiss the Maddoxes' counterclaim on September 16, 2016, asserting that no parties had been substituted for Samuel Maddox or Steve Maddox, the deceased parties. A hearing on this motion was originally set for October 31, 2016, but later continued and reset for December 7, 2016.

¶42.     On October 19, 2016, Judge Gerald Martin entered an order allowing the substitution of Samuel Maddox's estate as a party. The order recognized that Samuel Jr. had been appointed as executor of Samuel Maddox's estate. The Sullivans filed a motion seeking to

15

set aside the order allowing substitution on November 18, 2016. The Sullivans argued that, pursuant to Mississippi Rule of Civil Procedure 25, an "action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days" after service of a suggestion of death. The Sullivans asserted that this ninety-day period for the substitution of a party lapsed on April 6, 2016, for Steve Maddox and on August 10, 2016, for Samuel Maddox.

¶43. On December 7, 2016, the chancellor held a hearing to rule on the following orders and motions: the special master's report; the Maddoxes' objection to the report; the Sullivans' response to the Maddoxes' objection; the Sullivans' motion to dismiss the Maddoxes' counterclaim; the Maddoxes' response to the Sullivans' motion to dismiss; the Sullivans' motion to set aside and vacate the order for substitution of party; and the Maddoxes' response to the Sullivans' motion to set aside the order. From the bench, the chancellor ruled that he ratified, affirmed, and adopted "all prior orders, decrees, rulings, and judgments" that were entered before the matter was transferred to him.

¶44. On February 23, 2017, the chancellor memorialized his bench rulings in an order. The order provided that the chancellor was "adopt[ing] and ratif[ying]" the report of the special master and making it the final judgment of the chancellor. The chancellor held that the Maddoxes "shall have no easement," and dismissed the Maddoxes' counterclaim with prejudice. The chancellor assessed the costs for the special master, which amounted to $3,547.50, against the estates of both Steve and Samuel Maddox jointly and severally. The chancellor denied the Sullivans' request for attorney's fees, as well as the Sullivans' motion

16

to set aside and vacate the order allowing Samuel Maddox's estate to be substituted as a party. The chancellor further stated that "All prior [o]rders, [d]ecrees, [r]ulings[,] and [j]udgments filed in this cause are hereby ratified and affirmed by this [c]ourt."

¶45. On March 22, 2017, the Sullivans filed their notice of appeal of the chancellor's February 23, 2017 final judgment as well as the October 8, 2013 judgment denying the Sullivans' motion to dismiss or alternatively for a continuance of the hearing and assessment of monetary sanctions. On March 29, 2017, the Maddoxes filed their notice of cross-appeal, asserting as error several sections of the February 23, 2017 final judgment: (1) paragraph two, where the chancellor adopted and ratified the report of the special master; (2) the chancellor's finding that the Maddoxes shall have no easement across the Sullivans' property; (3) the denial of the Maddoxes' counterclaim; (4) the chancellor's assessment of the special master's costs to the Maddoxes; and (5) the finding that "the report of the special master is hereby adopted and ratified by this [c]ourt and made the final judgment of the [c]ourt."

## DISCUSSION

### I. April 10, 2013 Judgment Dismissing Complaint and Awarding Sanctions

¶46. We review a chancellor's Rule 41(b) dismissal for failure to prosecute for an abuse of discretion. *Cox v. Cox*, 976 So. 2d 869, 874 (¶11) (Miss. 2008).

#### A. Notice

¶47. The Sullivans argue that they failed to receive notice that they were at risk of having their complaint dismissed pursuant to Rule 41(b). The Sullivans maintain that the

17

chancellor's April 10, 2013 judgment dismissing their complaint was entered "in utter disregard" to the Sullivans' right to reasonable advance notice and their opportunity to be heard. The Sullivans argue that the lack of notice and opportunity to be heard prior to dismissing the complaint violated their federal and state procedural due process rights. The Sullivans also argue that the Maddoxes never filed a Rule 41(b) motion to dismiss the complaint and that as a result, the chancellor erred in dismissing the complaint sua sponte.

¶48. In support of their argument, the Sullivans cite to *Holly v. Harrah's Tunica Corp*., 962 So. 2d 136, 140 (¶21) (Miss. Ct. App. 2007), where this Court reversed a dismissal under Rule 4l(b) after finding that the plaintiffs were denied sufficient notice of the defendants' motion and an opportunity to respond prior to the circuit court's ruling. However, *Holly* is distinguishable from the present action. In *Holly*, the defendants filed the motion to dismiss the plaintiff's complaint; in the case before us, the chancellor dismissed the complaint sua sponte. *Id.*

¶49. "The power to dismiss for failure to prosecute can be exercised sua sponte where a motion by a party is lacking." *Miss. Dep't of Human Servs. v. Guidry*, 830 So. 2d 628, 631 (¶10) (Miss. 2002). In *Guidry*, the supreme court addressed the issue of whether notice is required before a trial court's entry of an involuntary dismissal:

> The [United States] Supreme Court . . . discussed the fundamental due process requirements of being heard and of notice being given of such a dismissal. *Link* [*v. Wabash R.R. Co.*], 370 U.S. [626,] 632 [(1962)]. The Court stated that every order entered without notice given did not violate due process. *Id*. "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Id*. The Court also found "when circumstances make such

action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting."

*Guidry*, 830 So. 2d at 632 (¶11).

¶50.    We therefore find that the chancellor's judgment dismissing the Sullivans' complaint without notice to the Sullivans "did not violate due process." *Id*.

### B.    Dismissal

¶51.    The Sullivans next assert that the chancellor was not authorized to dismiss their complaint and grant sanctions pursuant to Rule 41(b). The Sullivans argue that although the chancellor dismissed their complaint based on the failure to prosecute prong of Rule 41(b), the record reflects that they prosecuted their case to trial on May 4, 2011, to the point where they had completed presenting their evidence and rested. The case was then continued. The Sullivans quote *Wallace v. Jones*, 572 So. 2d 371, 376 (Miss. 1990), in support of their argument that "the case had come to trial and there was no want of prosecution. Therefore, the chancellor could not have dismissed this case under Rule 41(b) for [the Sullivans'] failure to prosecute the case." The Sullivans also maintain that the Maddoxes never filed a Rule 41(b) motion seeking dismissal of the complaint.

¶52.    The Maddoxes, however, maintain that in their answer and counterclaim they requested that the chancellor dismiss the complaint with prejudice. The Maddoxes also assert that they requested sanctions in their joint response to the Sullivans' 2013 motion for recusal.

¶53.    We recognize that "the law favors a trial of the issues on the merits," and therefore

19

"a dismissal for lack of prosecution is employed reluctantly." *Holder v. Orange Grove Med. Specialties, P.A.*, 54 So. 3d 192, 196 (¶16) (Miss. 2010) (quoting *Miss. Dep't of Human Servs. v. Guidry*, 830 So. 2d 628, 632 (¶13) (Miss. 2002)). Rule 41(b) allows defendants to move for dismissal of any action based on the plaintiff's failure to prosecute. *Id*. at 196-97 (¶17); M.R.C.P. 41(b). The supreme court has further held that "Rule 41(b) embodies the tenet that 'any court of law or equity may exercise the power to dismiss for want of prosecution. This power, inherent to the courts, is necessary as a means to the orderly expedition of justice and the court's control of its own docket.'" *Id*. at 197 (¶17) (quoting *Hillman v. Weatherly*, 14 So. 3d 721, 726 (¶17) (Miss. 2009)). "Unless otherwise specified in its order, a dismissal under Rule 41(b) is an adjudication on the merits of the case and is with prejudice." *Hensarling v. Holly*, 972 So. 2d 716, 719 (¶7) (Miss. Ct. App. 2007).

¶54. Upon review of a Rule 41(b) dismissal, we consider "[w]hat constitutes failure to prosecute . . . on a case-by-case basis." *Cox*, 976 So. 2d at 874 (¶14). The supreme court has provided considerations to be weighed in determining whether to affirm a Rule 41(b) dismissal with prejudice: "(1) whether there was a clear record of delay or contumacious conduct by the plaintiff; (2) whether lesser sanctions may have better served the interests of justice; and (3) the existence of other aggravating factors." *Id*. (internal quotation marks omitted) (quoting *AT&T v. Days Inn of Winona*, 720 So. 2d 178, 181 (Miss.1998)).

¶55. We acknowledge that "[t]here is no set time limit on the prosecution of an action once it has been filed . . . ." *Holder*, 54 So. 3d at 197 (¶17) (quoting *Guidry*, 830 So. 2d at 632). "However, if the record shows that a plaintiff has been guilty of dilatory or contumacious

20

conduct, or has repeatedly disregarded the procedural directives of the court, such a dismissal is likely to be upheld." *Hensarling*, 972 So. 2d at 720 (¶8). "We also are mindful of the fact that dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." *Holder*, 54 So. 3d at 197 (¶17) (internal quotation marks omitted) (quoting *Hoffman v. Paracelsus Health Care Corp*., 752 So. 2d 1030, 1034 (¶11) (Miss. 1999)).

¶56.    In examining the first factor of whether a clear record of delay or contumacious conduct by the plaintiff exists, the record reflects that in April 2010 the chancellor entered an agreed order prohibiting the Maddoxes from entering the Sullivans' property. The agreed order stated: "[S]hould this matter not be resolved within [forty-five] days, this matter shall be brought back before this [c]ourt for further action." In his April 10, 2013 judgment, the chancellor observed that the Sullivans filed their complaint on March 30, 2010 and they "have not sought to prosecute their [c]omplaint since the one day of trial on May 4, 2011." Our review of the docket reflects the following filings made over a nearly two-year period after the chancellor continued the May 4, 2011 trial:

| May 19, 2011 | The Maddoxes' Motion for Designation of Expert Witness Out of Time |
| --- | --- |
| May 19, 2011 | Notice of Hearing on Motion to Allow Designation of Expert Witness Out of Time |
| May 24, 2011 | The Sullivans' Response and Defenses to the Maddoxes' Motion to Allow Designation of Expert Witnesses Out of Time |

| October 29, 2012 | Letter from Stubbs to the Maddoxes' attorney in response to the email stating that the Maddoxes planned to ask the chancellor on October 28, 2012, to set the matter for trial. Stubbs stated he was not available on that date and that "this case does not need to be set to complete trial" until after the Court of Appeals renders its decision in *Sullivan I*. |
|---|---|
| November 2, 2012 | Letter from Stubbs (recipient and subject matter not listed) |
| March 13, 2013 | The Sullivans' Motion for Recusal of Judge in This Case and in All Other Cases |
| April 4, 2013 | The Maddoxes' Joint Response to the Sullivans' Motion for Recusal |

¶57. These filings show no effort by the Sullivans to set the case for trial after May 4, 2011, when it was continued. In October 2012, Stubbs wrote an email to the Maddoxes' attorney (in response to their email informing him that they intended to set the matter for trial), informing counsel that he was unavailable and that "this case does not need to be set to complete trial" until after the Court of Appeals renders its decision in *Sullivan I*. However, the record contains no order from the chancellor or motion to stay the proceedings until the Court of Appeals entered a decision in *Sullivan I*.

¶58. Turning to the second factor of whether the chancellor considered lesser sanctions, we recognize that "[l]esser sanctions include fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Cox*, 976 So. 2d at 876 (¶24) (internal quotation marks omitted). Where the record shows no indication that the chancellor considered any alternative sanctions, "[t]his Court is less likely to uphold a Rule 41(b) dismissal." *Id.*

¶59. The chancellor's April 10, 2013 judgment clearly reflects that he did in fact consider

lesser sanctions. The chancellor stated that he also considered the Sullivans' and Stubb's prior attack on the chancellor's integrity by making allegations of improper campaign donations and the allegations of impartiality in *Sullivan I*. The chancellor recalled that Sullivan's attack in *Sullivan I* resulted in sanctions in the amount of $42,922.91, which this Court affirmed on appeal. The chancellor found that despite these sanctions, the Sullivans and Stubbs "continue[d] their dilatory conduct, delay, contumacious conduct and the preparing and procurement of affidavits all in an effort to embarrass and attack the integrity of the [c]ourt." The chancellor determined that a monetary sanction in the present matter would therefore be insufficient. Our review of the record shows that lesser sanctions were considered and rejected. *Cox*, 976 So. 2d at 876 (¶25).

¶60. In reviewing whether aggravating factors existed, we acknowledge that aggravating factors include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." *Id*. at (¶27) (quoting *AT&T*, 720 So. 2d at 181 (¶13)). While not required, a finding of aggravated factors "strengthens the case for dismissal under Rule 41(b)." *Id*. In the present case, the chancellor found that the Sullivans intentionally tried to delay the case from moving forward. In his April 10, 2013 judgment, the chancellor stated that when the Maddoxes informed Stubbs that they intended to put the case on the docket in October 2012, "the [Sullivans] objected. Instead of moving the case, doing anything with the case, it turned into well, let's get rid of the judge," referring to the Sullivans' 2013 motion to recuse.

23

¶61.    After reviewing the record, we find that the chancellor did not abuse his discretion by dismissing the complaint and imposing monetary sanctions.

### C.    Impermissible Sanction Enhancers

¶62.    The Sullivans assert that the chancellor used impermissible sanction enhancers in determining to dismiss their complaint. In their appellate brief, the Sullivans make several arguments in support of this claim. In so doing, the Sullivans delve into various explanations and arguments as to why they initiated and prosecuted the action in *Sullivan I*. On appeal of *Sullivan I*, this Court affirmed the chancellor's grant of summary judgment dismissing the claims of all parties with prejudice. *Sullivan I*, 122 So. 3d at 82 (¶22). This Court also affirmed the chancellor's denial of Dempsey Sullivan's motion to recuse and the chancellor's findings that the motion to recuse was made for the purposes of harassment and delay. *Id*. at 84, 85 (¶¶28, 33). Any further arguments as to the merits of *Sullivan I* should have been made in a motion for rehearing. Accordingly, we decline to entertain these arguments in the present appeal.

¶63.    We will, however, briefly address the Sullivans' argument regarding their motion for recusal. The Sullivans maintain that their March 2013 motion for recusal was made in good faith and rested on new grounds and evidence not available at the time of their 2011 motion and that, as a result, the chancellor erred in enhancing the Sullivans' sanctions based on the chancellor's finding that the 2013 motion was impermissibly repetitious. The Sullivans further maintain that on appeal in *Sullivan I*, this Court ruled that the 2011 motion was procedurally deficient. The Sullivans state that the 2013 motion contains the requisite

24

affidavits.

¶64. As stated, on April 12, 2011, the Sullivans filed motions for recusal of the chancellor in both *Sullivan I* and *Sullivan II*. Both motions made identical allegations of a lack of impartiality. In *Sullivan I*, this Court affirmed the chancellor's finding that Dempsey Sullivan's complaint and April 2011 motion for recusal constituted frivolous filings made for the purposes of harassment and delay. *Sullivan I*, 122 So. 3d at 85 (¶33).

¶65. In the present matter, in the chancellor's April 10, 2013 judgment, he discussed the Sullivans' 2013 motion to recuse, as well as the affidavits and bar complaint attached to the motion. After his review, the chancellor found that the attached documents failed to "evidence any bias or partiality of this [c]ourt" and produced "no evidence of this [c]ourt having any involvement in or knowledge of" improper campaign donations or other improper conduct. Like the 2011 motion, the chancellor determined that the 2013 motion was also a frivolous pleading made for the purpose of harassment and delay without substantial justification and showed disrespect for the integrity of the court. As stated, the chancellor also found that despite the sanctions issued in *Sullivan I*, the Sullivans and Stubbs "continue[d] their dilatory conduct, delay, contumacious conduct and the preparing and procurement of affidavits all in an effort to embarrass and attack the integrity of the [c]ourt." The chancellor determined that a monetary sanction in the present matter would therefore be insufficient.

¶66. We find that the chancellor was within his discretion to consider the 2011 motion for recusal and previously existing information when assessing sanctions.

25

## II. February 23, 2017 Final Judgment

¶67. The Sullivans argue that the chancellor should have adopted the special master's report in full and not included additional language outside of the report—specifically, language affirming and ratifying prior orders of the court. The Sullivans maintain that in an order entered November 21, 2014, the chancellor transferred the entire action to the special master, not just part of the action. The Sullivans also assert that the special master's report addressed the entire action.

¶68. "We will not disturb a chancellor's factual findings when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Deans v. McColumn*, 184 So. 3d 972, 975 (¶13) (Miss. Ct. App. 2015) (quoting *Venture Sales LLC v. Perkins*, 86 So. 3d 910, 913 (¶11) (Miss. 2012)).

¶69. Mississippi Rule Civil Procedure 53 allows the court to appoint a special master to hear matters. Subsection (d) of this rule provides, in pertinent part, as follows:

> The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearing and for the filing of the master report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order.

M.R.C.P. 53(d). Rule 53(g)(2) states that "[t]he court shall accept the master's findings of fact unless manifestly wrong." We further recognize that "a master's report has no effect until it is either accepted or rejected by the chancellor." *In re J.W.*, 220 So. 3d 202, 203 (¶5)

26

(Miss. Ct. App. 2017).

¶70. As stated previously, in the present case, the chancellor's full November 21, 2014 order appointing the special master does not appear before us—the record contains only the first two pages of the order. In the order, the chancellor discussed the procedural history of *Sullivan II*, including the Sullivans' complaint and the Maddoxes' counterclaim, and found that "the above matters constitute exceptional conditions which require this [c]ourt to consider the use of a Special Master so that this . . ."; the sentence is incomplete because the remainder of the order does not appear in the record before us. The partial order seems to transfer the entire matter to the special master; however, the special master's report clearly states that his only role was to determine whether the Maddoxes possessed an easement. Additionally, a review of the special master's report reflects that all of the claims in the present action were not resolved by the special master's report. At the December 7, 2016 hearing, the chancellor held a hearing to rule on the special master's report, as well as the following orders and motions not addressed in the report: the Maddoxes' objection to the special master's report;[8] the Sullivans' response to the Maddoxes' objection; the Sullivans'

_____

[8] Rule 53(g)(2) provides that a party objecting to the special master's report must serve their written objections within ten days of the filing of the report. The Maddoxes filed a timely objection to the findings in the special master's report, but the Sullivans did not file a written objection. In *Cuevas v. Kellum*, 12 So. 3d 1154, 1159 (¶21) (Miss. Ct. App. 2009), this Court held that a party "waived her objections to the findings when she failed to timely object within ten days as required under Mississippi Rules of Civil Procedure 53(g)(2)." However, in *Davison v. Mississippi Dep't of Human Servs.*, 938 So. 2d 912 (Miss. Ct. App. 2006), this Court held that although a party "failed to serve a written objection to the master report within ten days . . . [,] a master report has no effect until it is either accepted or rejected by the chancellor." *Id*. at 914-15 (¶5) (citing *Evans v. Davis*, 401 So. 2d 1096, 1099 (Miss. 1981). The *Davison* court explained that "[e]ven if [the objecting party] never filed a written objection or notice of appeal, the chancellor was still required to determine whether

27

motion to dismiss the Maddoxes' counterclaim; the Maddoxes' response to the Sullivans' motion to dismiss; the Sullivans' motion to set aside and vacate the order for substitution of party; and the Maddoxes' response to the Sullivans' motion to set aside the order. The chancellor's February 23, 2017 final judgment memorializes the rulings on these additional motions and orders.

¶71. We find that the Sullivans were incorrect in their belief that the special master's report addressed all of the claims between all of the parties. The chancellor also possessed the authority to accept or reject the special master's report. The chancellor was therefore within his discretion to ratify and affirm the prior orders and judgments of the court.

### III. Estate of Samuel Maddox

¶72. The Sullivans next argue that the suggestions of death for both Steve and Samuel Maddox terminated their claims in the matter, including their award of sanctions against the Sullivans. The Sullivans assert that sanctions cannot be assigned to heirs. The Sullivans also maintain that the Estate of Samuel Maddox was improperly substituted as a party because Mississippi Rule of Civil Procedure 25 does not allow for an extension of time to substitute a party.

¶73. Rule 25 provides that upon the death of one party, a "motion for substitution" must be made "within ninety days after the death is suggested" or "the action shall be dismissed without prejudice." *Burch v. Illinois Cent. R.R. Co.*, 136 So. 3d 1063, 1066 (¶8) (Miss. 2014) (quoting Miss. R. Civ. P. 25(a)(1)). The comment to Rule 25(a)(1) states that "[t]he general

---

to accept or reject the master report." *Id.*

28

provisions of [Mississippi Rule of Civil Procedure] 6(b) apply to motions to substitute; accordingly, the court may extend the period for substitution if timely requested." M.R.C.P. 25(a)(1) advisory committee notes; *see Burch*, 136 So. 3d at 1067 (¶8). The ninety-day period commences upon "a statement of the fact of the death that is served on parties in the suit under Rule 5 and on non-parties under Rule 4." *Keller v. Bennett*, 103 So. 3d 747, 750 (¶10) (Miss. Ct. App. 2012) (internal quotation marks omitted).

¶74. On May 12, 2016, Sullivan and Stubbs filed a suggestion of death stating that Samuel Maddox died on May 11, 2016. Eighty-eight days later, on August 8, 2016, Samuel Jr. filed an entry of appearance and a motion for extension of time for substitution. In his motion, Samuel Jr. asserted that the Sullivans failed to properly serve the suggestion of death. Samuel Jr. requested that the chancellor allow for an additional ninety days "for the person qualifying to serve as executor by court appointment to be substituted in that capacity for Samuel Maddox in this action." On October 19, 2016, Judge Gerald Martin entered an order allowing the substitution of Samuel Maddox's estate as a party. The order recognized that Samuel Jr. had been appointed as executor of Samuel Maddox's estate.

¶75. Our review shows that Samuel Jr. timely petitioned the court for an extension to file a substitution of parties. The chancellor allowed the extension, and the chancellor later entered an order substituting Samuel's estate as a party.

¶76. Regarding the Sullivans' claims that the Maddoxes' deaths terminated their claims in the matter and that sanctions cannot be assigned to heirs, Mississippi Code Annotated section 91-7-233 states that "[e]xecutors . . . may commence and prosecute any personal action

29

whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted." "The term 'personal action' as used in [this section] means an action for recovery of personal property, for breach of contract, or for injury to person or property." *In re Estate of Beckley*, 961 So. 2d 707, 710 (¶5) (Miss. 2007).

¶77. In *Beckley*, 961 So. 2d at 711 (¶5), the supreme court stated that "actions to recover personal property, to enforce a contract, or to recover damages for breach of contract or for injury to person or property survive the death of the decedent." In that case, the supreme court held that "[u]pon the executor's substitution as party-plaintiff, the executor effectively stepped into the shoes of [the plaintiff] in prosecuting the action pursuant to [section] 91-7-237." *Id.* The supreme court determined that the estate "could then recover the funds that [the decedent] might have recovered had he lived to final judgment." *Id.*

¶78. We find no abuse of discretion by the chancellor in allowing substitution of the Estate of Samuel Maddox as a party.

¶79. As stated, in the chancellor's September 17, 2013 hearing on sanctions, he ordered Stubbs to pay $19,617.32 to Steve Maddox and Samuel Maddox as reimbursement for attorney's fees and expenses. No party was ever substituted upon Steve Maddox's death. Rule 25(a)(1), which governs the substitution of parties, states: "The action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record by service of a statement of the fact of the death as herein provided for the service of the motion." It does not appear that the chancellor ever dismissed the action as to Steve Maddox. We therefore

30

reverse the chancellor's award of attorney's fees and expenses and remand to the chancellor with instructions to: (1) dismiss the action without prejudice as to Steve Maddox pursuant to Rule 25(a)(1) and then (2) reassess the distribution of the award of attorneys' fees and expenses to the remaining party.

## IV. Cross-Appeal

¶80.    On cross-appeal, the Maddoxes argue that the special master erred in determining that they did not have a valid easement across the Sullivans' property. The Maddoxes assert that they in fact possessed two easements: an easement of record and an easement by implication.[9]

¶81.    As stated, "[w]e will not disturb a chancellor factual findings when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Deans*, 184 So. 3d at 975 (¶13) (quoting *Venture Sales LLC*, 86 So. 3d at 913 (¶11)). "We review questions of law de novo." *Hardy v. Hardy*, 241 So. 3d 636, 638 (¶5) (Miss. Ct. App. 2018).

¶82.    As stated above, the special master issued a report, finding that Collier was granted an easement from a public road to certain land she owned, which did not front a public road. The special master stated that this easement constituted an easement appurtenant that ran with the land owned by Collier and was for the purpose of ingress, egress, and regress. In 1987, the Sullivans purchased land from Collier that adjoined the land on which the easement

---

[9] In the proceedings below and on appeal, the Maddoxes use the terms "easement by implication" and "easement by implied grant" interchangeably. For the purposes of continuity, we will use the term "easement by implication."

31

was given. Collier maintained ownership of a pie-shaped portion of land. The special master determined that Collier did not reserve an easement over the land she sold to the Sullivans for access to the pie-shaped portion of land she still owned. The special master found that "[w]ith the 1987 purchase, the Sullivans then became the owners of the easement since by the easement's very terms, the easement belonged to the land, not to . . . Collier personally."

¶83. By other conveyances over time, the Sullivans acquired the land through which the 1981 easement was given. The special master concluded that when the Sullivans "owned both the land on which the easement was given and the adjacent land for which the easement was given, the easement merged into the land on which the easement was given and, therefore, the 1981 easement no longer existed."

¶84. In 1994, Collier sold the Maddoxes the remaining portion of the land for which the easement was given and purported to transfer the easement itself. The special master found that "[w]hile the Maddoxes' pie-shaped piece of land is adjacent to other lands they own and lands the [Sullivans] own, it is not adjacent to lands on which the 1981 easement was located. In fact, it is about 900 feet away."

¶85. Our review of the record confirms that the Sullivans and Maddoxes purchased their land from a common source. The special master stated that when the Maddoxes purchased their property from Collier, "they knew, or should have known, that they would only have access to the lot through the adjoining land they owned and not the Sullivans['] land." The special master determined that if the Maddoxes had purchased the property before the Sullivans purchased the land between the pie-shaped portion and the land over which the

32

easement was granted, they could have possibly obtained an easement by implication, but because they purchased the land after the Sullivans, the Maddoxes did not obtain an easement by implication.

¶86.    On cross-appeal, the Maddoxes claim they have an easement to access their property across the Sullivans' property by way of the 1981 easement and an additional easement. The Maddoxes specifically claim that the 1981 easement is valid, that it did not terminate, and that they have an easement by implied grant.

### A.    Easement of Record

¶87.    The 1981 easement created an easement to Collier's property described in the easement, but to no other property. The easement, by its terms, ran with the land, and when the Sullivans obtained both the land on which the easement was granted and all the land adjoining the easement which the easement served, the easement merged and no longer existed. The special master advised that the Maddoxes "may file an action in the appropriate Court against the Sullivans and their other neighbors to attempt to establish an easement for necessity if they think that such need exists."

¶88.    The Maddoxes claim the 1981 easement is valid in that it comports with the rules for instruments conveying an interest in land, complies with the Statute of Frauds, was properly acknowledged and recorded, was granted upon the receipt of valuable consideration, and the description of the easement is sufficient. Second, the Maddoxes claim that the finding that the easement "no longer existed because of merger is in error because it fails to recognize that there was not a complete merger of the dominant and servient estates." They cite *Taylor*

*v. Hays*, 551 So. 2d 906 (Miss. 1989). In that case, the supreme court addressed whether the trial court properly removed an access easement. *Id*. at 907-08. The easement at issue was not written or recorded. *Id*. at 908. The supreme court stated that "[t]he type of easement in existence has been named an easement by implication in some cases and in other cases an easement by necessity. We think that, here, we are confronted with an easement by necessity, arising by implication." *Id*. The *Taylor* court "set forth the general rule that an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another." *Id*. The *Taylor* court further stated that "easements or rights-of-way by necessity exist only so long as the necessity exists and the easement by necessity terminates when other access to the land-locked property becomes available." *Id*. This rule might be distinguishable from easements that are written and recorded. However, the supreme court quoted a case from the Connecticut Supreme Court:

> It is a fallacy to suppose that a right of way of necessity is a permanent right, and the way a permanent way, attached to the land itself, whatever may be its relative condition, and which may be conveyed by deed, irrespective of the continuing necessity of the grantee. . . . It is a principle true from the very nature of the case, and as such is recognized by all the authorities, that a way of necessity, whether it originates in the necessity of the party claiming it, or from the operation of deeds furnishing evidence of the intent of the parties, where a necessity exists, is limited by the necessity which creates it, and is suspended or destroyed, whenever such necessity ceases.

*Id*. at 909 (citing *Pierce v. Selleck*, 18 Conn. 321, 329 (1847)).

¶89. The Maddoxes also rely on *Will v. Gates*, 680 N.E.2d 1197, 1200 (N.Y. 1997), for the

34

proposition that "[a]n easement is not extinguished under the doctrine of merger by the acquisition by the owner of the dominant or servient estate to title to only a fractional part of the other estate." *Id.* at 1200. *Will v. Gates* involved a right-of-way that abutted properties of all the parties. *Id*. at 1198. The Maddoxes claim that they have a dominant estate with access to the easement despite the fact that, as determined by the special master, their property is about 900 feet away from the easement. It is not clear from *Will* that a dominant estate could be divided and subdivided with each retaining rights to the easement even if such divided estates are separated from the easement.

¶90. In the present case, the record shows that Collier sold the land on which the 1981 easement existed to the Sullivans. Several years later, the Maddoxes purchased the pie-shaped portion. The land was no longer commonly owned. The special master also found that Collier's land did not originally abut or front the public road. The 1981 easement did not connect to the pie-shaped portion. The special master stated that when the Maddoxes purchased their property from Collier, "they knew, or should have known, that they would only have access to the lot through the adjoining land they owned and not the Sullivans['] land." We accordingly find that the Maddoxes did not possess an easement of record.

### B. Easement by Implication

¶91. The Maddoxes also claim that when Collier conveyed part of the dominant estate to Sullivan, she retained an easement by implication to the property she retained and that "[w]ith the Okatoma River to the West and otherwise being landlocked, this easement by

[implication] was necessary at the time of the initial severance and remains necessary."[10]

¶92.    This Court has held that "[a]n 'easement by necessity' and an 'implied easement' are the same." *Hardy v. Hardy*, 241 So. 3d 636, 638 (¶7) (Miss. Ct. App. 2018) (quoting *King v. Gale*, 166 So. 3d 589, 594 (¶25) (Miss. Ct. App. 2015)); *see also Taylor v. Hays*, 551 So. 2d 906, 908 (Miss. 1989) (recognizing that "an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another")). "A claimant seeking an easement by necessity has the burden of proof and must establish that he is entitled to a right of way across another's land." *Id*. (quoting *Davidson v. Collins*, 195 So. 3d 825, 827 (¶11) (Miss. Ct. App. 2015)). To establish an easement by necessity, a claimant is required to prove that "(1) the easement is necessary; (2) the dominant and servient estates were once part of a commonly owned parcel; (3) the implicit right-of-way arose at the time of severance from the common owner." *Id*. "To satisfy this burden, the claimants must show strict necessity; that they possess no other means of access to their property." *Id*. (quoting *Haik v. Gammill*, 122 So. 3d 771, 778 (¶26) (Miss. Ct. App. 2013)).

¶93.    In the case before us, as in *Hardy*, "[i]t is undisputed that the parties to this appeal hold land derived from a once commonly owned . . . parcel." *Id.* at (¶8). As to the factor of whether the implicit right-of-way arose at the time of severance from the common owner, the Maddoxes maintain that they acquired Collier's easement by implication for ingress and

---

[10] In their answer and counterclaim, the Maddoxes claim that they have an easement by necessity and an easement by implication.

36

egress from the pie-shaped portion of the estate she later sold to the Maddoxes to the parcel of land that is the subject of the 1981 easement and which provides access to the public road. The special master determined that the parcel of land on which the Maddoxes maintain they have an easement by implication measures approximately 900 feet. However, the special master determined that Collier did not reserve an easement on this 900 feet for access to from the pie-shaped portion of land she still owned to the subject of the 1981 easement.

¶94. As to whether the easement is necessary, the special master stated that the Maddoxes "only have access to the [pie-shaped portion they purchased from Collier] through the adjoining land they owned and not the Sullivans." The Maddoxes assert that the Okatoma River lies to the west of their property, and therefore the easement by implication is necessary to afford Collier, and now the Maddoxes, with access to the 1981 easement, which then provides access to and from the public road. The Sullivans argue that "[f]urther proof shows that the Maddoxes have not one but two other routes to enter their property"; however, they provide no record citation for this claim, and we find nothing in the record to support the claim.

¶95. Although the special master concluded that the Maddoxes did not have an easement of record or an easement by implication, he advised that the Maddoxes "may file an action in the appropriate [c]ourt against the Sullivans and their other neighbors to attempt to establish an easement for necessity if they think that such need exists."

¶96. After our review, we find no easement of necessity exists. In *Hardy*, the land was still all commonly owned, and no land separated the tracts owned by the brothers. Here, the land

with the easement was no longer commonly owned when the Maddoxes bought their pie-shaped portion. The record and the special master's report reflect that the Maddoxes can access the pie-shaped portion from the other land they own. As stated, the chancellor adopted and ratified the special master's report in his final judgment. We find the chancellor did not abuse his discretion in finding that the Maddoxes did not possess an easement of record or an easement by implication across the Sullivans' property and in dismissing the Maddoxes' counterclaim with prejudice.

## CONCLUSION

¶97. We affirm the following the chancellor's dismissal of the Sullivans' complaint with prejudice; the chancellor's award of sanctions; the chancellor's judgment ratifying and affirming all prior orders of the chancery court; the chancellor's order substituting the Estate of Samuel Maddox as a party; and the chancellor's judgment finding that the Maddoxes did not have an easement of record or an easement by implication across the Sullivans' property. However, we reverse the chancellor's award of attorney's fees to Steve Maddox and Samuel Maddox, which the chancellor issued as sanctions against Stubbs, and we remand this issue to the chancellor with instructions to: (1) dismiss the present action without prejudice as to Steve Maddox pursuant to Rule 25(a)(1) and (2) and then reassess the distribution of the award of attorney's fees and expenses to the remaining party.

¶98. **ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART. ON CROSS-APPEAL: AFFIRMED.**

**BARNES, C.J., WESTBROOKS, TINDELL AND LAWRENCE, JJ., CONCUR. GREENLEE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY TINDELL AND LAWRENCE, JJ.; McCARTY, J., JOINS IN PART.**

38

**J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J. C. WILSON, J., NOT PARTICIPATING.**

**GREENLEE, J., SPECIALLY CONCURRING:**

¶99. Because of our limited standard of review, I am compelled to concur with the majority. Although part of the attorney's fees in this case was awarded to the Maddoxes for the cost of defending the complaint, it appears some attorney's fees were also awarded for the cost of the counter-complaint even though the counter-complaint was unsuccessful. The chancellor ultimately denied the Maddoxes' request for an easement—the object of their unsuccessful counter-claim. The amount and reasonableness of attorney's fees, however, was not challenged on appeal. Nor was Exhibit 1 (which detailed the attorney's fees) included in the record on appeal. Only the appropriateness of the chancellor's award of attorney's fees as a sanction is before this Court, not the propriety of fixing the amount so ordered. I therefore specially concur.

**TINDELL AND LAWRENCE, JJ., JOIN THIS OPINION. McCARTY, J., JOINS THIS OPINION IN PART.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶100. Everyone deserves zealous counsel, and no one deserves the burden of vexatious litigation. The boundary between these lands is not always distinct. Combined with the prior iteration of this long-running fistfight in *Sullivan I*, the majority allows a sanction against the lawyer totaling $62,540.23. Because I see the lawyer's action as one of zealous service to his client, I cannot agree to the imposition of this amount, or the use of prior conduct

39

resulting in sanctions as a basis for further sanction.

¶101.  The Preamble to our Rules of Professional Conduct tells how "[a]s advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."  Our Mississippi Rules of Civil Procedure were established "to secure the just, speedy, and inexpensive determination of every action."  M.R.C.P. 1.  Mississippi Rule of Civil Procedure 11 puts teeth to these lofty ideals, so that when a litigant has interfered with our ordered system of justice they may be sanctioned—not must be sanctioned, but "the court may order" sanctions.  M.R.C.P. 11(b).  The Advisory Committee Notes to Rule 11 explain "[t]he final sentence of Rule 11(b) is intended to ensure that the trial court has sufficient power to deal forcefully and effectively with parties or attorneys who may misuse the liberal, notice pleadings system effectuated by these rules."  So we have rules, but they may at times be in tension with a lawyer's duty to be zealous on behalf of a client.

¶102.  In *Sullivan I,* the lawyer in this case was hammered for not attaching an affidavit supporting a request for recusal.  *Sullivan v. Maddox*, 122 So. 3d 75, 83 (¶26) (Miss. Ct. App. 2013).  We were blunt: "Sullivan has provided no explanation on appeal for this defect in the record."  *Id*.  This omission was a significant portion of our decision, resting on a finding "that Sullivan failed to present evidence in support of his motion for recusal raising a question as to the chancellor's impartiality," properly construed as a total failure of proof. *Id*. at 84 (¶27).

¶103.  The trial court had determined sanctions were appropriate in part because of the motion to recuse, one of four bases claimed for sanction.  *Id*.  On appeal, the Court affirmed,

finding "no abuse of discretion in the chancellor's finding that Sullivan's complaint and motion for recusal constituted frivolous filings made for the purposes of harassment and delay." *Id*. at 85 (¶33).

¶104. After that decision—and after paying over $42,000 levied as a sanction—the lawyer then filed a new motion to recuse. This one did have affidavits and supporting proof. In fact, the motion to recuse had seven affidavits from seven different people, a copy of a campaign contribution, and an expenditure list from the trial court's recent campaign. Having learned from this Court's pronouncement in *Sullivan I*, the lawyer appears to have followed the rule with gusto.

¶105. It is clear the trial court did not like what was in the affidavits and did not like that the request to recuse was resumed. This is where that wandering line between zealousness and vexation must be pinned to a map. The trial court ruled that this was a continuing example of delay and harassment, which was in line with the lawyer's prior sanctioned actions.

¶106. It seems to me to be quite different. We should remember that to be zealous means to embrace the wildness of advocacy and belief. I do not quibble with the trial court's denial of the request to recuse but rather the refusal to recognize that the lawyer was striking a blow out of passion. The decision was also made based on the rule requiring affidavits in support of a motion to recuse.

¶107. The lawyer paid the sanction fee the first time. The point was made, and we do not need to make it again. I would affirm but reverse the sanction, setting the mark on this map

within the land of zeal.

**McDONALD, J., JOINS THIS OPINION.**